IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROLAND GIBSON, et al.,** | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 06-0551 (JMF) |
| **THE UNITED STATES OF AMERICA,** et al., | ) |
| Defendants. | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States of America, respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting Defendant summary judgment on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

In support of this Motion, Defendant respectfully submits the attached memorandum of points and authorities with exhibits, a statement of material facts as to which there is no genuine dispute, and a proposed order.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

  /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office

                                                  Civil Division
                                                  555 4th Street, N.W. – Room E4212
                                                  Washington, D.C. 20530
                                                  (202) 514-7139
                                                  COUNSEL FOR DEFENDANTS

Of Counsel:

Perri Rothemich
United States Department of the Interior
Office of the Solicitor
1849 C Street, N.W.
MS 7308
Washington, DC 20240

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROLAND GIBSON, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 06-0551 (JMF) |
| THE DISTRICT OF COLUMBIA, et al., | ) |
| Defendants. | ) |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, the United States of America, respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 56, for an Order granting summary judgment in its favor. Close scrutiny of the facts as revealed by the depositions and other evidence in this matter reveal a case that, in its entirety, is appropriate for summary resolution. Ample discovery has taken place in this matter, which shows that summary judgment is warranted in Defendant's favor because none of the material facts are in dispute and those facts establish that, as a matter of law, plaintiffs cannot establish their claims of negligence or negligent infliction of emotional distress. Furthermore, because the District of Columbia was the superseding cause of plaintiffs' injuries, it is the District, if anyone, that is solely responsible to the plaintiffs. Nor can the District of Columbia show that it is entitled to indemnification or contribution, as sought in its cross-claims. Thus, summary judgment in favor of the United States is warranted as it regards plaintiffs' claims and the cross-claims of the District of Columbia.

I.  **FACTUAL BACKGROUND**

At approximately 2:45 p.m. (1445 hours) on December 8, 2004, United States Park

Police Officer Donald Corey Houghton ("Officer Houghton") was working at the Park Police District I Station in Haines Point when he heard a dispatch call concerning an assault on a police officer ("APO"). Ex. 1, at 12-13. The dispatcher indicated that the APO was committed by a black jeep that was traveling on the Baltimore-Washington parkway, heading into the District of Columbia. Id. at 12-13; Ex. 2, at 00009. After receiving approval from his supervisor, Officer Houghton left the station to assist the other officers. Ex. 1, at 13-14.

Officer Houghton was driving an unmarked police cruiser with its lights and sirens activated. Id. at 13-14, 44. As he continued to monitor the black jeep's progress on Channel 2, the channel devoted to Park Police dispatch calls, he was driving between 30 and 60 miles per hour. Id. at 15, 17. At approximately 3:20 p.m. (1520 hours), Officer Houghton heard the dispatcher announce that shots had been fired from the black jeep. Id. at 18-20, 60; Ex. 2, at 00009. At this time, Officer Houghton was in the vicinity of 59th & Clay Street, N.E., traveling in a westbound direction. Ex. 1, at 20, 60. Officer Houghton could visually see the black jeep was stopped in the middle of the street, at a point past 61st street. Id. at 20.

As Officer Houghton approached the intersection of 61st and Clay street, N.E., he was traveling between 30 and 50 miles per hour. Id. at 22. Because there is a four-way stop sign at the intersection, Officer Houghton applied his brakes when he was approximately 20 yards before the intersection, thus slowing his vehicle to approximately 30 miles per hour. Id. at 23, 29. He stated that he slowed down prior to entering the intersection because he did not "want to blow the intersection . . . ." Id. at 23.

When slowing down at the intersection, Officer Houghton looked to his left and right to make sure the intersection was clear. Id. at 21. He did not see anything to his left. Id. To his

right, he saw a silver, metallic looking Chevrolet Caprice approaching the intersection very slowly, and pulling to the right. Id. Because he was aware that the Chevrolet Caprice was coming to a stop, Officer Houghton entered the intersection. Id. at 28. At that time, Officer Houghton saw the MPD cruiser for the first time, traveling northbound on Clay street. Id. at 21; 25. The MPD cruiser was being driven by Officer Marvin Watkins, and his field instructor, Officer Gary Gulich. Ex. 3, at 22. Officer Houghton attempted to turn his vehicle to the right, to avoid a collision. Id. at 26-27; 29-30. Despite his attempt, the MPD cruiser struck the passenger side door of Officer Houghton's vehicle, causing Officer Houghton's vehicle to hit the front end of the Chevrolet Caprice, and to continue traveling into a yard just west of the intersection. Ex. 2, at 00008, 00009. The MPD cruiser struck the front end of the Chevrolet Caprice, causing the front right side of the vehicle to hit a telephone pole. Id. at 00008; see also Ex. 5, at 23. Although the MPD officers were responding to the incident involving the black jeep, MPD orders specifically prohibit such assistance. Ex. 8, at 11, § VI, C.2. Furthermore, the MPD officers' failure to stop at the four-way intersection at 61st & Clay Street further violated MPD's general order. Id. at 4, § V D.2.

    The Chevrolet Caprice, which was registered to Mr. Carl Pilgrim, was being driven by plaintiff Rolan Gibson. Ex. 4, at 9. Plaintiff Hawkins was a passenger in the vehicle. Ex. 5, at 9. At the sound of gunshots being fired, both plaintiffs turned their heads to the right, the direction from which the gunshots came. Ex. 4, at 16, 106; Ex. 5, at 13. Neither plaintiff saw Officer Houghton or the MPD cruiser enter the intersection. Ex. 4, at 16, 106; Ex. 5, at 13. Nor did either plaintiff recall with certainty whether the vehicles had their emergency lights and sirens activated. Ex. 4, at 30, 103-04; Ex. 5, at 18. Neither plaintiff sought any medical

attention for emotional distress or suffering. Ex. 4, at 113; Ex. 5, 57-58.

On March 22, 2006, plaintiffs filed their complaint with this Court. In their complaint, plaintiffs allege two counts pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-80 ("FTCA").[1] Count I alleges negligence against the Park Police and MPD. Count II alleges negligent infliction of emotional distress. On June 28, 2006, the United States of America filed its answer to plaintiffs' complaint and filed a cross-claim against the District of Columbia seeking indemnification and/or contribution from the District of Columbia. [Docket No. 7]. On August 1, 2006, the District of Columbia filed its answer to plaintiffs' complaint and asserted a counterclaim against the United States for contribution and/or indemnification. [Docket No. 19].

## II.   STANDARD OF REVIEW

Summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate when the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, the trier of fact must view all the facts, and the reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. In order to withstand summary judgment, the non-

---

[1] Prior to filing their complaint in this Court, both plaintiffs filed administrative claims with the United States Department of the Interior, which were denied.

moving party is not at liberty to rest upon mere allegations or denials but must come forth with evidence establishing a material issue of fact for trial. Id. at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. Id. at 247-48. If the submitted evidence is of such a character that it would not permit a reasonable fact-finder to find in favor of the non-moving party, summary judgment is appropriate. Id. at 251.

### III.   SUMMARY JUDGMENT IS WARRANTED IN FAVOR OF THE UNITED STATES ON PLAINTIFFS' CLAIMS.

Summary judgment is warranted on counts I and II of plaintiffs' complaint because, as a matter of law, plaintiffs cannot establish that Officer Houghton was negligent in taking the actions he took on December 8, 2004. Furthermore, the evidence establishes that the District of Columbia was the superseding cause of any injuries plaintiffs may have sustained. Finally, plaintiffs have failed to produce any evidence that would sustain their claim of negligent infliction of emotional distress, requiring dismissal of count II of their complaint.

#### A.   **Plaintiffs Cannot Establish that the United States was Negligent.**

The law is well-settled that the United States, as a sovereign, may be sued only to the extent that it has consented to suit by statute. See Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994); United States v. Testan, 424 U.S. 392, 399 (1976). A waiver of immunity must be explicit. See Honda v. Clark, 386 U.S. 484, 501 (1967). The exclusive remedy for common law tort claims against the United States is the FTCA. 28 U.S.C. § 2679(a); Meyer, 510 U.S. at 473. The FTCA authorizes district courts to hear suits against the United States

> for money damages . . . for injury or loss of property, or personal
> injury or death caused by the negligent or wrongful act or omission
> of any employee of the Government while acting within the scope

5

> of his office or employment, under circumstances where the United
> States, if a private person, would be liable to the claimant in accordance
> with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); see also Cope v. Scott, 45 F.3d 445, 447 (D.C. Cir. 1995).[2]

"Under the FTCA, the United States is liable for torts committed by its agents 'to the same extent as a private individual under like circumstances . . . .'" Hetzel v. United States, 43 F.3d 1500, 1504 (D.C. Cir. 1995). The United States' liability is determined "in accordance with the law of the place where the act or omission occurred." Id. (citing 28 U.S.C. § 1346(b)). Thus, because the accident occurred in the District of Columbia, it is to that law that the Court must refer in determining whether or not Officer Houghton's actions were negligent.

Under District of Columbia law, to establish a claim of negligence, a plaintiff must establish "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damages to the interests of the plaintiff, proximately caused by the breach." Taylor v. District of Columbia, 776 A.2d 1208, 1214 (D.C. Cir. 2001) (citation and internal quotation marks omitted). The FTCA specifically limits the liability of the United States "in the same manner and to the same extent as a private person under like circumstances . . . ." 28 U.S.C. § 2674.

While there is no private analogue to a federal officer's ability to engage in a pursuit of a suspected felon, the District of Columbia Circuit has specifically held that the standard of care applicable to a federal law enforcement officer operating an emergency vehicle in pursuit of a

---

[2] Because the FTCA only holds the United States liable for the specific acts or omissions of its employees, "[t]he FTCA is governed exclusively by the doctrine of respondeat superior. Thus, the United States can only be liable for the wrongful acts of its employees. 28 U.S.C. § 1346(b)(1)." Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 128 (D.D.C. 2005) (Facciola, M.J.).

fleeing suspect is that found in the District of Columbia municipal regulations, D.C.M.R. § 18-2002.4. <u>Hetzel</u>, 43 F.3d at 1505 ("The standard of care to which the United States must be held . . . where it seeks to apply the standard of care of D.C. Metropolitan Police Officers, is that of due care, or negligence, as set forth in District of Columbia regulations . . . ."). <u>See also</u> <u>id.</u> at 1503 ("Other courts confronting the issue of FTCA liability in the law enforcement context have abandoned the private individual analogy and looked to the standards of care applicable to government employers under state law.") (citation omitted).

Pursuant to D.C.M.R. § 18-2002, the driver of "an authorized emergency vehicle" is permitted to exercise certain privileges when operating the vehicle pursuant to one of the following circumstances:

> (a) When responding to an emergency call;
>
> (b) When in pursuit of an actual or suspected violator of the law . . . .

D.C. M.R. § 18-2002.1.  If a driver is operating his vehicle in one of the circumstances set forth above, that driver may:

> (b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
>
> (c) Exceed the *prima facie* speed limit, so long as it does not endanger life or property; except that this provision does not apply to ambulances; . . . .

<u>Id.</u> § 2002.2.  These exceptions are applicable when the driver of an emergency vehicle "sounds an audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped as specified in § 712 of this title." <u>Id.</u> § 2002.3.  Finally, the regulation provides that

> The provisions of this section shall not relieve the driver of an authorized

>    emergency vehicle from the duty to drive with due regard for the safety
>    of all persons, nor shall these provisions protect the driver from the
>    consequences of his reckless disregard for the safety of others.

Id. § 2002.4.

The District's regulations comport with the Park Police's own general orders that provide that, "when approaching a controlled intersection, an officer shall <u>stop</u> or <u>reduce speed</u>, as circumstances dictate . . . ." Ex. 9, Park Police General Order No. 3071. Further, General Order No. 2205 provides that "[a]lthough officers are given a qualified privilege from observing certain traffic regulations while operating an emergency vehicle utilizing emergency equipment during a pursuit, they are not relieved of the responsibility of driving with due regard for the safety of all persons." Ex. 10, Park Police General Order No. 2205.

With these standards in mind, to establish negligence, the plaintiffs must show that there was a breach of the standard of care that was owed to them. Such a finding was made in <u>Hetzel</u>, 43 F.3d at 1506, where the appellate court affirmed a jury verdict in favor of plaintiffs, and held that a drug enforcement officer was liable for negligence in the conduct of a "high-speed chase in a heavily traveled area during the morning rush hour . . . ." The court noted that the officer "fail[ed] to abandon the chase after he lost sight of the suspect[,]" and his conduct was "contrary to the Guidelines of the D.C. Metropolitan Police Department and the International Association of Chiefs of Police." These facts supported the finding that he acted negligently in the conduct of his pursuit. Id.

Contrary to <u>Hetzel</u>, in this case plaintiffs cannot establish that Officer Houghton breached the duty of care, as set forth in D.C.M.R. section 2002.4, or the applicable Park Police general orders. First, despite making such allegations in their complaint, plaintiffs cannot say with

certainty whether or not Officer Houghton's emergency lights were activated.  Ex. 3, at 104; Ex. 4, at 18.  Nor did either plaintiff actually view whether or not Officer Houghton's vehicle slowed down prior to entering the intersection.  Id. at 19-20; 27; Ex. 4, at 13.  Thus, there is no evidence to refute Officer Houghton's testimony that he had his emergency lights and sirens activated throughout the pursuit.  Ex. 1, at 46.  Nor is there any testimony to refute the fact that Officer Houghton slowed down when he approached the intersection at 61st and Clay street, and visually confirmed that it was safe to enter the intersection.  Id. at 28, 29.  Rather, after Officer Houghton visually confirmed that it was safe to enter the intersection, it was the MPD cruiser that struck his car, causing that vehicle to collide with the plaintiffs' vehicle.  Id. at 30-31.  Officer Houghton's actions were clearly consistent with District of Columbia Municipal Regulation section 18-2002, and with the Park Police's policies regarding vehicular pursuits and the operation of emergency vehicles.  Thus, while it is unfortunate that plaintiffs suffered injury as a result of the collision, plaintiffs cannot establish that Officer Houghton's operation of his vehicle was in any way negligent or failed to conform to the standard of due care, and thus the United States is not liable to them for any injuries they may have suffered.

      **B.**     **The District of Columbia was the Superseding Cause of Plaintiffs' Injuries.**

In the event that the Court concludes that the United States was negligent by virtue of Officer Houghton's actions, there is a further impediment to plaintiffs seeking recovery from the United States – specifically, the District of Columbia was the superseding cause of their injuries and thus the United States cannot be held liable.

In a negligence action, there are "various factors" pertinent to the policy elements of proximate cause that District of Columbia courts consider.  Butts v. United States, 822 A.2d 407,

418 (D.C. 2003). These "various factors" serve to "relieve a defendant of liability even when his actions were the cause-in-fact of the injury." Id. (citation omitted). One of the factors "to be considered is whether there was an intervening cause." Id. (citation omitted). "An intervening cause will be considered a superseding legal cause that exonerates the original actor if it was so unforeseeable that the actor's negligent conduct, though still a substantial causative factor, should not result in the actor's liability." Id. (citing Restatement (Second) of Torts § 440).

In this case, the District of Columbia was the superseding cause of the accident at issue. The negligence of the MPD officers, in failing to stop at the stop sign prior to entering the intersection, was not foreseeable. As Officer Houghton testified, he slowed down prior to entering the intersection and did not see any vehicles, aside from the plaintiffs' vehicle pulling to a stop. Ex. 1, at 23. Therefore, it was not foreseeable to him that the MPD cruiser would completely ignore the traffic stop signals and hit his car with such force that it caused his car to hit the vehicle in which the plaintiffs were sitting, and pushed him onto the front yard of a residential home. Ex. 2, at 00008-00009.

MPD's participation in the vehicular pursuit was further unexpected because it was directly contrary to MPD's own general order, which specifically prohibits such action. Notably, MPD General Order 301.03 ("Vehicular Pursuit") provides:

> An operator of a Department vehicle shall not participate in a vehicular pursuit initiated by other law enforcement agencies operating within the District of Columbia <u>or a vehicular pursuit initiated by officers of outside jurisdictions, which enter or terminate in the District</u>.

Ex. 8, at 11, § VI, C. 2 (emphasis added). Furthermore, assuming they were lawfully involved in the pursuit of the black jeep, MPD's general orders required Officers Watkins and Gulich to stop at the controlled stop-sign intersection prior to proceeding:

10

> When approaching an intersection controlled by a stop sign, the
> operator of the vehicle <u>shall stop</u> before entering the intersection.

<u>Id.</u> at 4, § V. D.2 (emphasis added). Clearly, based on the impact with Officer Houghton's vehicle that caused severe damage to his driver side door, Officer Watkins and Gulich failed to comply with this directive. <u>See</u> Ex. 6; Ex. 7.

For these reasons, the Court should find that the District of Columbia, as a result of the negligence of its officers, was the superseding cause of any injuries plaintiffs may have suffered, and that the United States cannot be held liable to the plaintiffs.

### C. Plaintiffs Cannot Establish a Claim of Negligent Infliction of Emotional Distress.

"In the District of Columbia, a plaintiff may recover for negligent infliction of emotional distress if the plaintiff proves (1) that the plaintiff suffered either a physical impact or was within the zone of danger of the defendant's actions, (2) that the plaintiff suffered emotional distress that was serious and verifiable, and (3) that the defendant acted negligently." <u>David v. District of Columbia</u>, 436 F. Supp. 2d 83, 89 (D.D.C. 2006).

Summary judgment in the United States' favor is warranted on plaintiffs' claims for negligent infliction of emotional distress. Aside from the facts that Officer Houghton did not act negligently and that the accident was attributable to MPD's actions, plaintiffs have not provided any evidence to demonstrate that they suffered emotional distress that was "serious and verifiable." <u>Id.</u> For his part, plaintiff Hawkins provided <u>no</u> testimony concerning any alleged emotional distress he suffered. Rather, when specifically asked "what other losses" he claims to

have suffered, aside from his medical bills and his missed days of work,[3] Mr. Hawkins included "[t]raveling back and forth to the doctor's and gas[,]" as his only other loss. Ex. 5, at 57, 58.

And, as it concerns Mr. Gibson, his only reference to emotional pain and suffering was made in response to questioning by his attorney. Ex. 4, at 109, 113. However, when asked whether he sought any medical attention regarding this alleged emotional pain and suffering, Mr. Gibson answered "No." Id. at 113. And, in response to a direct question regarding his alleged losses, Mr. Gibson failed to identify emotional pain and suffering as one of his losses:

> Q. So aside from the clothes, the transportation, the medications, and the 1992 Chevy Caprice, were there any other damages that you felt were a result of this accident? Any other losses you suffered?
>
> A. Yeah.
>
> Q. What else?
>
> A. Losses as far as – I mean, its just - it was a real inconvenience not having a vehicle and being banged up, trying to find rides to the therapy, to the doctor's . . . just things you do, things that I do on a day-to-day basis.

Ex. 4, at 82.

Thus, it is readily apparent that neither plaintiff has presented any evidence upon which a judgment can be rendered in their favor on their claims of negligent infliction of emotional distress, and summary judgment in the United States' favor is warranted. See Brown v. Argenbright Security, Inc., 782 A.2d 752, 761 (D.C. 2001) (affirming summary judgment in favor of defendant on plaintiff's negligent infliction of emotional distress claim where "[n]o

---

[3] Despite providing a letter from his employer enumerating the days of work he missed, in fact one of those days – December 8, 2004, the date of accident – Mr. Hawkins was not scheduled to be at work. Ex. 4, at 51-52.

showing was made . . . of any 'serious' or 'verifiable' injuries . . . ."). See also Hudson v. District of Columbia, No. Civ.A. 02-2217, 2007 WL 1020751, at *5 (D.D.C. Apr. 2, 2007) (granting summary judgment to defendant on plaintiff's claim of negligent infliction emotional distress where grandmother, who witnessed her grandson beaten in her home by police officers, failed to show any "evidence of the type of long-term mental disturbance that can be characterized as 'serious' emotional distress. Rather, these feelings, though arising from lamentable circumstances, are not of sufficient duration or severity to be considered serious under District of Columbia law.") (citations omitted); Wright v. United States, 963 F. Supp. 7, 18 (D.D.C. 1997) (granting summary judgment to the United States on plaintiffs' claim of negligent infliction of emotional distress where the physical symptoms suffered by plaintiffs – "an inability to sleep and excessive nervousness --" could not primarily be attributed to the defendants' alleged negligence and any "emotional distress that was negligently caused was minimal and not 'serious and verifiable.'").

**IV.     THE DISTRICT OF COLUMBIA IS NOT ENTITLED TO INDEMNIFICATION OR CONTRIBUTION FROM THE UNITED STATES.**

In its cross-claim against the United States, the District of Columbia maintains that contribution or indemnification is warranted because the United States was the proximate cause of plaintiffs' injuries. This claim should be rejected.

Indemnification and contribution are two distinct, mutually exclusive, legal doctrines. Indemnification involves the shifting of responsibility, whereas contribution involves the sharing of responsibility. Hudert v. Alion Science & Tech. Corp., 429 F. Supp. 2d 99, 107 (D.D.C. 2006), mot. for reconsideration granted by, No. Civ.A. 05-545, 2007 WL 666567, at *1 (D.D.C. Mar. 2, 2007). Because indemnification involves "a shifting of responsibility from the shoulders

13

of one person to another . . . ." Quandrangle Dev. Corp. v. Otis Elevator Co., 748 A.2d 432, 435 (D.C. 2000), it is not available "when joint tort-feasors are [both] guilty of active negligence and their negligence concurs in causing the injury . . . ." Hubbard v. Chidel, 790 A.2d 558, 568-69 (D.C. 2002). In such cases, contribution may be available "to apportion damages among tortfeasors . . . ." Id. at 569. Contribution is defined as "the right of joint tort-feasors to collect from one another so that the plaintiff's losses are equitably shared by all wrongdoers." Hudert, 429 F. Supp. 2d at 107.

Indemnification is not available to the District of Columbia in this case. Indemnification is restricted to those situations where equity supports holding one party totally responsible for harm done to another, even in situations where a third party may have minor culpability in contributing to the overall injury. Quandrangle, 748 A.2d at 435. There is no basis to conclude that the United States is totally responsible for the injuries in this case. As discussed, supra, it was the negligence of the MPD officers in hitting Officer Houghton's car, causing his car to come into contact with the plaintiffs' car, that resulted in plaintiffs' injuries.

Similarly, the District of Columbia is foreclosed from seeking contribution. Contribution is available in situations involving joint-tortfeasors; thus, by definition, there can be no contribution unless there is joint liability by the parties to the plaintiff. Hubbard, 790 A.2d at 570. As argued supra, the United States is simply not liable to the plaintiffs because they cannot establish that the United States acted negligently. See Hudert v. Alion Science & Tech. Corp., No. Civ.A. 05-545, 2007 WL 666567, at *3 (D.D.C. Mar. 2, 2007) ("Indeed, '[a]n essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the sense that their negligence concurred in causing the harm to the injured party.'") (quoting District of

Columbia v. Wash. Hosp. Ctr., 722 A.2d 332, 336 (D.C. 1998)). Therefore, the District of Columbia's claim for contribution must be dismissed.

**V.    THE UNITED STATES IS ENTITLED TO CONTRIBUTION/ INDEMNIFICATION FROM THE DISTRICT OF COLUMBIA.**

In the event that the Court determines that summary judgment is not warranted on plaintiffs' claims, summary judgment in favor of the United States regarding its claim of indemnification/contribution from the District of Columbia is warranted. This is so because, as a matter of law, the District of Columbia is liable for any injuries plaintiffs may have sustained. As discussed supra, the negligence of the MPD officers was the proximate cause of any injuries plaintiffs may have suffered. Thus, the District of Columbia should indemnify the United States for any damages the plaintiffs may obtain against the United States. In the alternative, and at a minimum, the District of Columbia is liable for contribution to the United States for any damages that the plaintiffs may obtain because its negligence, coupled with the alleged negligence of the United States, resulted in the plaintiffs' alleged injuries. See Hudert, 2007 WL 666567, at *4 ("[I]t is true that a valid claim for contribution requires that both parties be found negligent . . . .") (citation omitted).

**VI.   CONCLUSION**

For the reasons set forth above, Defendant, the United States of America, is entitled to summary judgment in its favor on plaintiffs' and the District of Columbia's claims. Alternatively, the Court should grant the United States summary judgment on its claims of indemnification/contribution, and dismiss the claims of the District of Columbia for indemnification or contribution.

        Respectfully submitted,


         /s/ Jeffrey A. Taylor
        JEFFREY A. TAYLOR, D.C. BAR # 498610
        United States Attorney

         /s/ Rudolph Contreras
        RUDOLPH CONTRERAS, D.C. BAR # 434122
        Assistant United States Attorney

         /s/ Michelle N. Johnson
        MICHELLE N. JOHNSON, D.C. BAR # 491910
        Assistant United States Attorney
        United States Attorney's Office
        Civil Division
        555 4th Street, N.W. – Room E4212
        Washington, D.C. 20530
        (202) 514-7139

        COUNSEL FOR DEFENDANT

Of Counsel:

Perri Rothemich
United States Department of the Interior
Office of the Solicitor
1849 C Street, N.W.
MS 7308
Washington, DC 20240