IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROLAND GIBSON, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-0551 (JMF) |
| ) | |
| **THE UNITED STATES OF AMERICA,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 56.1 and 7(h), Defendant, the United States of America, respectfully submits this statement of material facts as to which there is no genuine issue in support of its Motion for Summary Judgment.

1. On December 8, 2004, at approximately 2:45 p.m. (1445 hours), United States Park Police Officer Donald Corey Houghton was at the United States Park Police District I Station located in Haines Point, when his department received a dispatch call regarding a stolen black jeep that was involved in an assault on a police officer. Exhibit ("Ex.") 1, Deposition of Officer Donald C. Hougton taken January 22, 2007 ("Houghton dep.") at 12-13; Ex. 2, United States Department of the Interior, Motor Vehicle Traffic Accident Report, Supplementary Case/Incident Record, at 00009.

2. It was reported that the black jeep was traveling down the Baltimore-Washington Parkway headed into the District of Columbia. Ex. 1, at 12-13; Ex. 2, at 00009.

3. In response to the dispatch call, and after receiving his supervisor's approval to respond to the call, Officer Houghton began heading in the direction of South Capitol Street, in

the Howard Road area of the District of Columbia, which is where the dispatcher indicated the black jeep was traveling. Ex. 1, at 13-14; 44.

4. Officer Houghton was driving an unmarked police cruiser with its lights and sirens activated. Id. at 14.

5. Officer Houghton continued to monitor the dispatcher on the Park Police's Channel 2, which is exclusively a Park Police channel. Id. at 15.

6. Officer Houghton traveled into the District of Columbia using the South Capitol Street bridge into the southeast area of the District of Columbia. Id. During this time, his speed varied between 30 and 60 miles per hour. Id. at 17.

7. At approximately 3:20 p.m. (1520 hours), when Officer Houghton was in the approximate area of 59th & Clay Street, N.E., traveling in a westbound direction, the dispatcher announced that shots had been fired. Id. at 18-20; 60; Ex. 2, at 00009.

8. At that point, Officer Houghton could visually see the black jeep ahead of him. Ex. 1, at 19. The black jeep was stopped in the middle of the street, at a point past 61st Street. Id. at 20.

9. Officer Houghton continued to proceed westbound on Clay at 61st Street. Id. at 21. As he approached the intersection of 61st and Clay Street, he was traveling between 30 and 50 miles an hour. Id. at 22.

10. Officer Houghton applied his brakes approximately 20 yards prior to entering the intersection at 61st & Clay Street because there is a four-way stop, thus slowing his vehicle to approximately 30 miles per hour. Id. at 23, 29. He looked to his left and did not see any cars approaching. Id. at 21. He looked to his right and saw a silver, metallic color Chevy Caprice approaching the intersection very slowly and pulling to the right. Id.

11. Officer Houghton testified that he was braking prior to entering the intersection so he could "see what's going on, so before – you know, I don't want to blow the intersection so I've got to slow down." Id. at 23.

12. Once Officer Houghton was aware that the Chevy Caprice appeared to be stopping and that he was free to go through the intersection, he released his brakes and entered the intersection. Id. at 28; 29.

13. After releasing his brakes and proceeding into the intersection, however, Officer Houghton immediately saw a Metropolitan Police Cruiser ("MPD") coming directly at him, traveling northbound on Clay Street. Id. at 21; 25.

14. Officer Houghton had entered the intersection, with his lights and sirens still activated, when he observed the MPD cruiser for the first time. Id. at 25, 30.

15. The MPD cruiser was just nearing the intersection, and had not yet reached the stop sign, but it was traveling at a very fast rate of speed. Id. at 25; 34-35.

16. Upon seeing the MPD cruiser, Officer Houghton attempted to turn his wheel toward the right, in an attempt to avoid colliding with the MPD cruiser. Id. at 26-27; 29-30. Despite his attempt, however, the MPD cruiser struck Officer Houghton's car. Id. at 30-31; 64.

17. The MPD cruiser was being driven by Officer Marvin Watkins, who was in field training at the time. Ex. 3, Deposition of Officer Marvin Watkins dated January 25, 2007 ("Watkins' Dep.") at 22-24. Officer Gary Gulich, who was providing training to Officer Watkins, was riding in the passenger seat of the cruiser. Id.

18. The Chevy Caprice was being driven by the plaintiff, Rolan Gibson. Ex. 4, Deposition of Roland Gibson dated March 7, 2007, ("Gibson dep."), at 9, 77. Plaintiff John Hawkins, Jr. was riding in the passenger seat. Ex. 5, Deposition of John Hawkins, Jr. dated

March 7, 2007, ("Hawkins' dep.") at 9. The car was registered to Mr. Carl Pilgrim. Ex. 4, at 9.

19. When he heard the sound of gun shots, Mr. Gibson turned his head to his right, in the direction from which he heard the sound. Id. at 16, 106. When he turned back around to look up, he saw Officer Houghton's vehicle and the MPD vehicle meet in the intersection. Id.

20. Mr. Gibson did not see Officer Houghton's vehicle prior to the time it entered the intersection, and therefore did not see whether it stopped or slowed down prior to entering the intersection. Id. at 19-20; 27. He could not, therefore, determine which vehicle entered the intersection first. Id. at 27.

21. Mr. Gibson did not know for sure whether Officer Houghton's vehicle had its lights and sirens on. Id. at 103-04; but see id. at 30.

22. Mr. Gibson was knocked unconscious as a result of the impact and therefore, does not know where the Park Police and MPD vehicles collided with his car. Id. at 29.

23. Mr. Hawkins did not see Officer Houghton's or the MPD vehicle enter the intersection. Ex. 5, at 13.

24. After turning his head towards the right, in the direction from which he heard gunshots, the next thing Mr. Hawkins saw was the car he was sitting in "being wrapped around a pole . . . ." Id. at 12-13.

25. Mr. Hawkins was uncertain whether Officer Houghton or the MPD vehicle had their lights and sirens activated. Id. at 18.

26. Neither plaintiff sought any medical attention for emotional distress or suffering. Ex. 4, at 113; Ex. 5, 57-58.

27. The MPD cruiser hit Officer Houghton's vehicle directly in the middle of Officer Houghton's driver side door. See Ex. 6, Photograph taken by Park Police investigator.

28. The impact of the collision caused Officer Houghton's car to hit the front end of the Chevrolet Caprice, which had come to a stop on 61st street. Ex. 2, at 00008.

29. Officer Houghton's car continued to travel into a yard just west of the intersection, and came to rest upon the steps/sidewalk/grass area in front of 6020 Clay street. Id. at 00008, 00009.

30. As a result of the collision with Officer Houghton's vehicle, the rear end of the MPD cruiser struck the front end of Chevrolet Caprice, locking the vehicles together. Id. at 00008. See also id. at 00006.

31. The MPD vehicle came to a stop facing south in the intersection. Id. at 00008. See also Ex. 7, Photograph taken by Park Police investigator.

32. The right side of the Chevrolet Caprice was pushed into a telephone pole. Id.; see also Ex. 5, at 23.

33. Officer Houghton's vehicle suffered severe damage to its driver side door. Ex. 6.

34. Consistent with hitting an object at high speed, the MPD cruiser's damage was in the front of the vehicle. Ex. 7.

35. Officer Houghton's lights and sirens were activated throughout the entire time that he was responding to the call concerning the black jeep. Ex. 1, at 46.

36. MPD General Order specifically provides that "[a]n operator of a Department vehicle shall not participate in a . . . vehicular pursuit initiated by officers of outside jurisdictions, which enter or terminate in the District." Ex. 8, MPD General Order Series No. GO-OPS-301.03, "Vehicular Pursuits" dated February 25, 2003, at 11, § VI, C. 2.

37. MPD General Order requires that officers engaged in a vehicular pursuit stop when approaching an intersection controlled by a stop sign. Id. at 4, § V. D. 2.

        Respectfully submitted,

        /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

        /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

        /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Perri Rothemich
United States Department of the Interior
Office of the Solicitor
1849 C Street, N.W.
MS 7308
Washington, DC 20240