# Exhibit 8

# GENERAL ORDER



**DISTRICT OF COLUMBIA**

Title: **Vehicular Pursuits**
Series / Number: **GO – OPS – 301.03**
Effective Date: **February 25, 2003**
Distribution: **A**
Replaces / Rescinds: General Order 301.3 (Operation of Emergency Vehicles, Fresh Pursuit and Vehicular Pursuit) General Order 308.3 (Use of Roadblocks) Teletype TT 07-072-02 (New Vehicular Pursuit Procedures)

I.   Background..........Page 1
II.  Policy.................Page 1
III. Definitions..........Page 1
IV.  Rules ................Page 2

V.   Regulations.........................Page  3
VI.  Procedural Guidelines.............Page  5
VII. Cross Reference....................Page 16

## I. BACKGROUND

When a member of the Metropolitan Police Department is engaged in a vehicular pursuit, the overriding responsibilities are the protection of human life and property. This order is designed to establish guidelines for members to follow that best protect the lives and property of all persons while member(s) are engaged in a pursuit situation.

## II. POLICY

The policy of the Metropolitan Police Department is that members who initiate a pursuit shall exercise caution and operate their vehicle in a safe manner while engaged in the vehicular pursuit. As the vehicular pursuit progresses, members and officials shall continually evaluate and assess the actual conditions of the pursuit in deciding whether to continue or discontinue the vehicular pursuit.

## III. DEFINITIONS

When used in this directive, the following terms shall have the meaning designated:

1. Emergency Vehicle - a Department vehicle equipped with the operable emergency warning devices listed below:

    a. Marked vehicles that have identifiable Department logos and are equipped with a siren and a beacon light mounted on the roof;

    b. Unmarked vehicles that do not have any identifiable markings, but are equipped with a siren and a portable emergency beacon light.

**DEFENDANT'S EXHIBIT**

**VEHICULAR PURSUITS (GO - OPS – 301.03)**

2. Vehicular Pursuit – an attempt by a member of this Department to apprehend a fleeing felon while in an authorized emergency vehicle with all emergency warning devices activated.

   a. Hot pursuit is a pursuit that occurs within the District of Columbia.

   b. Fresh pursuit is a hot pursuit that crosses the boundaries of the District of Columbia and enters into Maryland, Virginia or another jurisdiction.

3. Primary Unit – the first police unit that initiates a pursuit or any unit that assumes control of the pursuit.

4. Secondary Unit – the police unit that becomes involved as a backup to the primary unit.

5. Probable Cause - A set of facts, circumstances, and reliable information that would lead a reasonable and prudent officer to believe a certain crime has been committed and that a certain person committed the crime.

6. Reasonable Cause – A combination of specific facts and circumstances that would justify a reasonable officer to believe that a certain person had committed, is committing, or is about to commit a criminal act; more than a hunch or mere speculation but less than probable cause necessary to arrest; sometimes referred to as reasonable suspicion.

## IV. RULES

Any member engaging in a vehicular pursuit must follow the conditions that are set forth under Part V, Section D-2, "Fleeing Felon," of GO-RAR-901.07 (Use of Force), as described below: (CALEA 41.2.2. a & i)

A. Members may use deadly force to apprehend a fleeing felon ONLY when every other reasonable means of affecting the arrest or preventing the escape have been exhausted AND,

   1. The suspect fleeing poses an immediate threat of death or serious bodily harm to the member or others; OR (CALEA 1.3.2)

   2. There is probable cause to believe the crime committed or attempted was a felony which involved an actual or threatened attack which resulted, or could have resulted, in death or serious bodily harm; and

**VEHICULAR PURSUITS (GO - OPS – 301.03)**

3 of 16

    a. There is probable cause to believe the person fleeing committed, or attempted to commit, the crime; AND

    b. Failure to immediately apprehend the person places a member, or the public in immediate danger of death or serious bodily injury; AND

    c. The lives of innocent people will not be endangered if the fleeing felon is pursued.

3. Warning to Subject

When feasible, members shall identify themselves as police officers and issue a warning before discharging a firearm.

B. Members involved in a vehicular pursuit of a suspect shall not intentionally cause physical contact between their vehicle and the fleeing vehicle, nor shall the member attempt to force the vehicle into another object or off the roadway. (CALEA 41.2.2.g)

C. Members are prohibited from firing shots at, or from, a moving vehicle, unless deadly force is being used against them or another person, or intentionally placing themselves in a position to be in front of an on-coming vehicle where the use of deadly force would likely be the outcome. See, GO-RAR- 901.07 (Use of Force).

D. Members shall immediately notify the dispatcher and discontinue the pursuit when unsafe conditions exist or it becomes apparent that the vehicular pursuit could result in an accident, property damage or injury to citizens. (CALEA 41.2.2.h)

E. Members shall immediately terminate a pursuit when ordered by a Department official. (CALEA 41.2.2.h)

F. Members are prohibited from pursuing a vehicle for the purpose of affecting a stop for a traffic violation.

V. **REGULATIONS**

A. The initiation of a pursuit must be based on the conditions cited in Part IV, Rules, Section A, 1 & 2 of this order. Members shall weigh whether the immediate danger the pursuit presents to the member(s) and the public is less than the immediate or potential danger the suspect presents to the public should the suspect remain at large. (CALEA 41.2.2.a)

**VEHICULAR PURSUITS (GO - OPS - 301.03)**

B. A member who is pursuing a fleeing felon shall: (CALEA 41.2.2.b)

 1. Immediately notify the dispatcher; and

 2. Maintain constant communications with the dispatcher as the pursuit progresses.

C. Members, in both the primary and secondary unit, shall maintain a safe distance between their vehicle and the fleeing vehicle, to ensure that there is enough reaction time, should the fleeing vehicle suddenly turn or brake. (CALEA 41.2.2.b & c)

D. Members shall comply with the following traffic regulations when engaged in a vehicular pursuit:

 1. When approaching an intersection controlled by electric signal devices:

    a. Stop before entering the intersection when facing a red signal;

    b. Slow to the maximum legal speed limit when a green signal or a flashing yellow signal is displayed; and

    c. Stop before entering an intersection where four-way pedestrian walk signals are displayed.

 2. When approaching an intersection controlled by a stop sign, the operator of the vehicle shall stop before entering the intersection.

 3. When approaching an uncontrolled intersection or an intersection controlled by yield signs:

    a. Slow to the maximum legal speed limit before entering the intersection, and

    b. Comply with all other requirements applicable to uncontrolled intersections or intersections controlled by yield signs.

E. Only the PRIMARY and SECONDARY units are permitted to engage in a pursuit, unless the dispatcher or Watch Commander allows additional units to assist in the pursuit.

F. Members are prohibited from engaging in pursuits when a civilian, e.g. a Ride-Along, is in the patrol vehicle or when transporting a prisoner. (GO-OPS-204.04 (Ride-Along Program) and GO–PCA-502.01 (Transportation of Prisoners).

G. The use of roadblocks is strictly prohibited. (CALEA 61.3.4)

H. If a suspect is apprehended outside of the District of Columbia, e.g. in Maryland or Virginia, the suspect must FIRST be taken before a court in that jurisdiction, prior to being extradited to the District of Columbia.

I. When a fleeing subject has committed an offense for which a vehicular pursuit is not authorized, the member shall:

1. Provide a description of the vehicle and attempt to obtain the tag number;

2. Attempt to obtain a description of the operator;

3. Contact the dispatcher and request that he/she broadcast a lookout to surrounding jurisdictions to which the fleeing offender may be proceeding; and

4. Conduct an investigation of the incident and obtain a warrant so that the offender can be apprehended and prosecuted.

J. When a fleeing subject has committed an offense for which a vehicular pursuit is not authorized, members are permitted to pursue suspects on foot or on a mountain bike.

VI. **PROCEDURAL GUIDELINES**

A. Responsibilities of Members of the Department in Vehicular Pursuit (CALEA 41.2.2)

1. Once a vehicular pursuit has been initiated in compliance with the provisions of this order, members who are engaged in the pursuit shall observe the following procedures: (CALEA 41.2.2-B)

    a. As the PRIMARY UNIT:

    (1) Immediately notify the dispatcher;

    (2) Activate all emergency equipment; and

    (3) TURN ON THE HEADLIGHTS regardless of the time of day.

    b. Members operating a 10-4 unit shall open BOTH FRONT WINDOWS and in a 10-99 unit the DRIVER'S FRONT

WINDOW shall be opened so that the driver can hear other units responding to the area and to avoid a collision.

c. The PRIMARY UNIT shall provide the dispatcher with:

  (1) Their unit number;

  (2) The suspected criminal violation(s) and location;

  (3) The suspect's direction of travel and vehicle information;

  (4) The number of occupants and their description, if possible; and

  (5) Notification when the pursuit is entering another jurisdiction.

d. The SECONDARY UNIT shall back-up the PRIMARY PURSUIT VEHICLE and refrain from using airtime, except for emergencies. In cases involving accidents, the SECONDARY UNIT will disengage from the pursuit to provide medical assistance and/or to take reports of any injuries and/or property damage. (CALEA 41.2.2.c)

2. When involved in a pursuit, the PRIMARY PURSUIT UNIT shall use the WAIL POSITION on the electronic siren selector and the SECONDARY PURSUIT UNIT shall use the YELP POSITION.

3. Department vehicles shall be operated as emergency vehicles, when engaged in hot and fresh pursuits. Members shall not operate Department vehicles at speeds where they cannot control the vehicle, thereby endangering lives.

4. The dispatcher shall control all communications on the channel where the pursuit is being conducted and radio transmissions shall be confined to those units involved in the pursuit.

5. If airborne assistance becomes available, the helicopter shall only assist the primary and secondary units with the fleeing vehicle's direction of travel; both units shall continue the pursuit until it is terminated.

6. Members operating any of the below listed Department vehicles may initiate and continue a vehicular pursuit, until a marked unit joins the pursuit, at which time, the operators of the below listed vehicles shall immediately discontinue their participation: (CALEA 41.2.2. d)

**VEHICULAR PURSUITS (GO - OPS - 301.03)**

    a. A motorcycle equipped as an authorized emergency vehicle;

    b. A patrol wagon that is not transporting prisoners; and

    c. An unmarked sedan equipped with emergency devices.

7. The above vehicles shall continue to monitor the pursuit and proceed to the termination point, with appropriate authorization, to process any necessary reports and arrests.

8. Members who are not in uniform and/or are in unmarked vehicles, without grill or portable lights, and/or sirens, may take enforcement action only in the case of a violation that is set forth under Part IV, A of this directive and after requesting the assistance of a marked cruiser. Once the marked cruiser has arrived on the scene the member shall discontinue the pursuit.

9. A vehicular pursuit shall be continually assessed to determine whether it should be continued, taking into account the associated risk it presents to the member and the public. A decision to continue or terminate a pursuit may be made by the primary pursuit unit, the monitoring field supervisor or the Watch Commander. This does not replace the obligation to adhere to a lawful order given by an official. (41.2.2.a & h)

10. Conditions under which a vehicular pursuit shall be terminated include, but are not limited to, the following: (CALEA 41.2.2.a & h)

    a. When it becomes apparent that the vehicular pursuit could lead to unnecessary property damage, injury to citizen(s) or member(s) of the Department; or

    b. The pursuit is in close proximity to school(s) and hospital(s) and other locations with high pedestrian or vehicular activity; or

    c. When the distance between the pursuing member and the violator's vehicle is so great that the pursuing member loses sight of the violator and it becomes futile to continue the pursuit; or

    d. The violator is identified so that a warrant can be obtained for his/her arrest, and failure to apprehend does not pose an immediate threat of death or serious injury to another person; or

    e. Prevailing weather and road surface conditions make the pursuit dangerous; and

  f. When the time of day and locations are heavy with vehicular and pedestrian traffic.

11. When it is apparent that a vehicular pursuit should be terminated, the member shall notify the dispatcher and broadcast the suspect's direction and method of travel. If known, a description of the suspect, a lookout for the vehicle, including the tag number and its description shall be included in the broadcast. The member shall prepare any necessary reports.

B. Fresh Pursuit Laws

1. Pursuit of an offender who has committed a felony, to a surrounding jurisdiction is legal pursuant to the policy of this order. Because the consequences of fresh pursuit could be grave, and in some cases irreversible, it is imperative that all members have a clear and thorough understanding of their legal position while engaged in fresh pursuit.

  a. The D.C. Official Code, § 23, Sections 901 through 903, provides that a police officer from another jurisdiction may enter the District of Columbia in fresh pursuit, in order to arrest a person "on the grounds that he/she is believed to have committed a felony" in the pursuing officer's State. The pursuing officer has the same authority to arrest the person and hold him/her in custody as an MPD member. The arrested person must be taken before a judge of the D.C. Superior Court, without unnecessary delay, for a hearing to determine the lawfulness of the arrest.

  b. The Code of Maryland § 2-305 (Authority of officers of other states to arrest in this State), provides that a police officer may enter Maryland in fresh pursuit in order to arrest a person "on the grounds that he/she is believed to have committed a felony" in the pursuing officer's State (or the District of Columbia), and the pursuing member has the same power to arrest the person and hold him/her in custody as a Maryland officer. The arrested person must be taken before a county circuit judge without unnecessary delay for a hearing to determine the lawfulness of the arrest.

  c. The Code of Virginia § 19.2-79 (Arrest by officers of other states of the United States), provides that a police officer may enter Virginia in close/fresh pursuit in order to arrest a person "on the ground that he/she has committed a felony" in the pursuing officer's state or the District of Columbia. The pursuing

officer has the same power to arrest that person and hold him/her in custody as a Virginia officer. The arrested person must be taken before a judge of a general district court, or the circuit court of the county or city where the arrest was made, without unnecessary delay, for a hearing to determine the lawfulness of the arrest.

NOTE: The Office of the Attorney General, Commonwealth of Virginia, interprets the code provision "has committed" to mean that an officer need only have reasonable grounds or probable cause to suspect, rather than actual knowledge that a felony has been committed.

2. When a pursuit enters another jurisdiction (e.g. Maryland or Virginia), the pursuing member shall notify the dispatcher and request authorization from the Watch Commander to proceed into the adjoining jurisdiction. If authorization is granted, the member shall: (CALEA 41.2.2.i)

   a. As soon as possible, allow the pursuing unit from the outside jurisdiction to assume responsibility for the chase and discontinue the pursuit. De-activate all emergency warning devices and continue to monitor the pursuit, via the radio dispatcher, and proceed to the termination point to identify the suspect and the vehicle;

   b. If the situation culminates in the apprehension of a fleeing felon, the initiating MPD member shall place the suspect in the custody of the officer from the outside jurisdiction as a Fugitive from Justice and inform that officer of the crime the suspect will be charged with in the District of Columbia and the intent of the District of Columbia to request extradition of the suspect.

3. If a felon wants to voluntarily return to the District of Columbia, he/she shall be taken before a judge of the local court or a justice of the peace by the arresting officer from the outside jurisdiction for the purpose of executing a waiver.

4. When the felon does not want to return voluntarily, members shall place the felon in the custody of the officer from the outside jurisdiction and apply for a warrant in the District of Columbia.

5. UNDER NO CIRCUMSTANCES shall a felon who was apprehended in Virginia, Maryland or any other state be returned to the District of Columbia without being processed through the criminal justice system

**VEHICULAR PURSUITS (GO - OPS - 301.03)**

of the state where he/she was apprehended, in accordance with the legal procedures applicable to that jurisdiction.

6. Upon apprehension of the suspect, the MPD member shall contact the United States Attorney's Office in the District of Columbia to begin the extradition process. Once authorization has been granted, members shall notify the holding agency of the outside jurisdiction with the following information:

   a. Prepare a Teletype message to be forwarded to the arresting jurisdiction, including the name and description of the defendant, date, charge, and authorization (issued by the Assistant United States Attorney) to hold the defendant; and

   b. Provide the United States Attorney's Office in the District of Columbia with the arrest affidavit. Upon approval of the warrant, the United States Attorney's Office will handle all further matters concerning the return of the wanted person(s).

C. Fresh Pursuit into the District of Columbia from Outside Jurisdictions (CALEA 41.2.2.i)

   1. A duly sworn officer from another jurisdiction (e.g., Maryland or Virginia) is permitted to enter the District of Columbia in fresh pursuit and to continue the pursuit of an offender in order to arrest him/her on the grounds that he/she is believed to have committed a felony in the jurisdiction where the pursuit began. However, there is no authorization under the District of Columbia Code for an officer from another jurisdiction to affect an arrest within the District of Columbia for a misdemeanor offense.

      a. In cases where a suspect being pursued by an officer from an outside jurisdiction is apprehended, the vehicle operator and/or suspect may be charged with any violations committed in the District of Columbia, regardless of other actions taken in the case.

      b. Members of this Department who respond to a scene to assist an officer from an outside jurisdiction, at the end of a pursuit and discover that the crime for which the suspect was pursued was not a felony shall:

         (1) Assist the officer from the outside jurisdiction. This may include, but is not limited to, initiating a contact or conducting a stop and frisk, whichever is appropriate for the situation.

  (2) If, after conducting a contact or stop and frisk, the member still does not have grounds to arrest the suspect for a felony or a probable cause misdemeanor, the suspect shall be permitted to leave.

  (3) Under no circumstances shall a person arrested in the District of Columbia, whether by a member of this Department or an officer of another jurisdiction, be permitted to be removed from this jurisdiction without being extradited through the Court of the District of Columbia in accordance with the D.C. Official Code.

2. An operator of a Department vehicle shall not participate in a vehicular pursuit initiated by other law enforcement agencies operating within the District of Columbia or a vehicular pursuit initiated by officers of outside jurisdictions, which enter or terminate in the District.

D. Responsibilities of the Public Safety Communications Center (CALEA 41.2.2 - e)

1. The Director, Public Safety Communications Center, shall:

  a. Ensure that the policy and procedures outlined in this directive are followed by members assigned to the center;

  b. Forward training recommendations, through channels, to the Director, Institute of Police Science ; and

  c. Forward policy recommendations, through channels, to the Senior Executive Director, Office of Organizational Development.

2. The Communications Supervisor shall:

  a. Ensure that the provisions of this order and the Division's policies were followed in situations involving a vehicular pursuit;

    (1) Identify any training needs;

    (2) Determine whether any modifications need to be made to this order and/or the Communications Center policy; and

    (3) Submit any training or policy recommendations to the communications center director.

    b.    Monitor fresh pursuit situations;

    c.    Obtain complaint system (CS) numbers for all vehicular pursuits involving Department vehicles from the Office of Internal Affairs; and

    d.    Ensure that a copy of the tape-recorded radio transmission involving a vehicular pursuit is forwarded to the Office of Professional Responsibility within twenty-four hours of the incident.

3.    The Communications Dispatcher shall:

    a.    Have authority to control and coordinate a vehicular pursuit, by assigning the radio channel to be used by the primary and secondary units. All radio transmissions on the designated channel shall be confined to the units assigned by the dispatcher to participate in the vehicular pursuit.

    b.    Upon notification from a mobile unit that a vehicular pursuit has been initiated;

        (1)    Identify and give priority to the primary pursuit and secondary pursuit units,

        (2)    Immediately notify a Communications Division supervisor,

        (3)    As soon as possible, identify a field supervisor of the organizational element to which the pursuit vehicles are assigned to monitor the pursuit,

        (4)    Record all incoming information relating to the pursuit and perform relevant records and vehicle checks in an attempt to identify the owner and/or the violator,

        (5)    Assign no more than three Department vehicles to handle a pursuit: the primary and secondary units, and a field supervisor,

        (6)    Ascertain whether a helicopter is available to respond, and

        (7)    Notify other mobile units, as necessary, of the pursuit in progress.

  c. Voice a command to the affect that no other vehicles shall participate in the pursuit, unless specifically authorized to do so by the Watch Commander, when the primary and secondary units have been assigned to a pursuit.

  d. In fresh pursuit situations, a Communications supervisor shall monitor the pursuit and the radio dispatcher shall be responsible for notifying the dispatcher of the adjacent jurisdiction that the pursuit has crossed their boundary, and for maintaining liaison, via the Police Mutual Aid Radio System (PMARS), with any jurisdiction that is involved or may become involved.

  e. Take the following steps when a member of a law enforcement agency, other than this Department, initiates a vehicular pursuit;

    (1) Advise mobile units, as appropriate, of the general direction and progress of the pursuit, as well as any other pertinent information; and

    (2) When the pursuit terminates in the District of Columbia, designate two mobile units and one supervisory vehicle to respond to the termination point for the purpose of assisting the pursuing member; and

    (3) Broadcast the necessary lookout information to assist other mobile units in locating the vehicle and/or possible suspects when a pursued vehicle is lost.

E. The Field Supervisor shall: (CALEA 41.2.2. f)

  1. Immediately begin monitoring a vehicular pursuit involving a member of their assigned organizational element;

  2. Determine whether the pursuit was initiated in accordance with the provisions of this order;

  3. Approve or disapprove pursuits that enter into another jurisdiction and ensure that units are in compliance with inter-jurisdictional pursuit agreements and the law;

  4. Continuously monitor radio transmissions to determine whether the pursuit should be continued or terminated;

  5. Approve the assignment of additional backup units to assist the primary and secondary units and secure the location where the pursuit

terminates, in order to assist with the preliminary investigation, in the event the incident turns into a foot pursuit;

6. Respond to all scenes where injury and property damage occur as a result of the vehicular pursuit;

7. Conduct an administrative review with the members involved in the pursuit as soon as practical at the end of each pursuit to: (CALEA 41.2.2. j)

   a. Determine whether the pursuit was conducted in compliance with this order;

   b. Identify any pursuit patterns or trends that indicate training needs; and

   c. Determine whether any modifications need to be made to the policy herein.

8. Notify the Watch Commander of the circumstances involved in the vehicular pursuit as soon as practical.

9. Ensure that PD Form 845 (Vehicular Pursuit Report) is completed by all involved members prior to the end of their tour and submit the completed report to the Watch Commander.

F. The Watch Commander shall:

1. Review the Vehicular Pursuit Report, to confirm that the provisions of this order were followed. Attach the report to the PD Form 150 (Watch Commander's Report.) When vehicular pursuits result in accidents with injuries or property damage, copies of all reports shall be forwarded through channels to the Office of General Counsel.

2. Review any recommendations submitted by the field supervisor regarding the vehicular pursuit; and

   a. Forward any recommendations concerning training, through channels, to the Director, Institute of Police Science, or

   b. Forward any recommended policy modifications, through channels, to the Senior Executive Director, Office of Organizational Development.

G. The Director, Institute of Police Science shall:

1. Receive and review training recommendations resulting from vehicular pursuit incidents and investigations.

2. Incorporate appropriate training recommendations into Department training curricula.

3. Conduct a documented annual analysis, in consultation with the Senior Executive Director, Office of Organizational Development, to assess Department training and/or policy needs relative to vehicular pursuit situations. (CALEA 41.2.2)

H. The Commanding Officer shall:

1. Ensure that members comply with the policy and procedures outlined in this order.

2. Assign a non-involved element official, the rank of Captain or above, to conduct an investigation into the facts and circumstances surrounding ALL vehicular pursuits involving MPD vehicles.

I. Office of Internal Affairs shall:

1. Assign complaint system (CS) numbers to vehicular pursuit incidents and provide those numbers to the Communications supervisor or requesting official.

2. Monitor and/or investigate a vehicular pursuit involving a fatality, in conjunction with the Major Crash Unit.

3. Prepare an annual report relating the findings of Department vehicular pursuit investigations.

J. Major Crash Unit

The Major Crash Unit shall investigate vehicular pursuits involving fatalities, in conjunction with the Office of Internal Affairs.

VII.    **CROSS REFERENCES**

1. District of Columbia Municipal Regulations, Title 6A, Police Personnel, Chapter 2, Section 207
2. General Order 901.7, Use of Force
3. General Order 302.5, Radio Communications
4. General Order 302.1, Calls for Police Services

Charles H. Ramsey
Chief of Police

Attachments

CHR:NAJ:MAR:pas