**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ROLAN GIBSON,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil No.  06-0551 (JMF)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S
MOTION FOR JUDGMENT ON THE PLEADINGS
OR FOR SUMMARY JUDGMENT**

Defendant District of Columbia ("the District"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. Rules 12(c), 56(b) and (c), respectfully moves this Honorable Court to grant the District a judgment on the pleadings or, in the alternative, grant summary judgment in the District's favor.

A Memorandum of Points and Authorities in support of this Motion is attached hereto. Supporting exhibits and a proposed Order also are attached.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General,
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Sec. III

_____/s/_____

JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov

## F.R.C.P. 7(m) CERTIFICATION

Consent for this motion was not sought as it is dispositive.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 25th day of May, 2007, that a copy of the foregoing or Motion for Judgment on the Pleadings or for Motion for Summary Judgment and its supporting Memorandum of Law was mailed postage prepaid, or delivered via the U.S. District Court's Electronic Notification System to:

Joel DuBoff, Esq.
DuBoff & Associates, Chartered
8401 Colesville Road, Suite 501
Silver Spring, MD 20910

Michelle N. Johnson
Assistant United States Attorney
555 4th St. N.W. Room E4212
Washington , D.C. 20530

_____/s/_____

James H. Vricos
Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ROLAN GIBSON,** *et al*., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil No. 06-0551 (JMF)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**

Defendant District of Columbia ("the District"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. Rules12(c) and 56(b), respectfully moves this Honorable Court to grant the District a judgment on the pleadings or, in the alternative, grant summary judgment in the District's favor. As grounds therefore, the District states that in this case that involves a claim arising out of the operation of an emergency vehicle on an emergency, (1) the plaintiffs' Complaint does not allege gross negligence as is required by D.C. Code § 2-412; and (2) as a matter of law, the plaintiff does not have sufficient evidence to prove gross negligence on the part of the District.

*Statement of Facts*

This case arises out of a three-way automobile accident involving a Metropolitan Police Department ("MPD") vehicle occupied by driver Officer Marvin Watkins and passenger Officer Gary Gulich, a United States Park Police ("Park Police") vehicle occupied by Officer Donald Houghton, and the plaintiff's vehicle. The accident occurred on or about December, 8, 2004, at approximately 3:30 in the afternoon, at the intersection of 61st Street and Clay Street, NE, in the

1

District of Columbia.  (Complaint, ¶ 23.)  The whether conditions on that day were "clear" and "dry"; the road surface at this intersection was "straight"; and the traffic conditions at that time of the day were "light." (Exhibit B, MPD Police Report).  There is no testimony or other evidence in the record that there were any pedestrians in or near the intersection at the time this accident.

In the minutes leading up to the accident, Officers of the MPD were assisting the Park Police with their vehicular pursuit of a suspect believed to have committee an assault on a police officer.  (Exhibit A, Watkins Depo. Page 100).  This pursuit culminated in the area of 60th and Clay Street.  (Exhibit C, Houghton Depo. Page 20).

Moments prior the accident, a call for "shots fired" went out over both the MPD radio channel and the Park Police radio channel.[1]  Both MPD officers instantly determined that this call constituted an emergency situation and immediately began to respond to the area where this emergency had occurred.  (Exhibit A, Watkins Depo. Pages 51 - 52, Exhibit D, Gulich Depo. Pages 44 and 51).

At the time of the accident, the automobile driven by Park Police officer Donald Houghton was traveling west toward the four-way stop sign intersection of 61st Street and Clay in the Direction of where the pursuit had culminated.  (Exhibit B, MPD Police Report).  As Officer Houghton entered the intersection he was traveling between 30 and 50 miles per hour. (Exhibit C, Houghton Depo. Page 29).  The MPD vehicle was traveling north on 61st Street

---

[1] It is undisputed that the call for "shots fired" occurred prior to the accident.  MPD Officers Watkins and Gulich and Park Police Officer Houghton all testified that they were alerted to this emergency prior to the accident. (Exhibit A, Watkins Depo. Page 51, Exhibit D, Gulich Depo. Pages 44 and 51, Exhibit C, Houghton Depo. Pages 19 and 60).  Both Plaintiffs also testified that they heard the sound of gun shots, prior to the accident, coming from the direction where the pursuit had culminated. (Exhibit E, John Hawkins Depo. Pages 11-12, and Exhibit F, Rolan Gibson Depo. Pages 26 – 27).

toward the intersection with Clay Street.  The MPD vehicles' rate of speed at the time it entered

the intersection is disputed.  MPD officers estimate that they were traveling no faster than ten

miles per hour. (Exhibit D, Gulich Depo. Page 47 - 48).  Park Police Officer Houghton estimated

that the MPD vehicle was traveling approximately forty-five miles per hour. (Exhibit C,

Houghton Depo. Page 35).   The vehicle occupied by the Plaintiffs' was stopped in the area at or

near the stop sign pointing south on 61st Street.  (Exhibit B, MPD Police Report).   Both MPD

officers and Park Police Officers Houghton have testified that they had activated the lights and

sirens for there vehicles at the time they entered the intersection.[2] (Exhibit A, Watkins Depo.

Page 80, Exhibit D, Gulich Depo. Pages 44, Exhibit C, Houghton Depo. Page 30)

      After both police vehicles had entered the intersection, they collided.  The impact of the

collision caused both vehicles to strike the plaintiffs' car. (Exhibit B, MPD Police Report,

Exhibit C, Houghton Depo. Page 31).

      On March 22, 2006, the plaintiff filed this action against the District and the United

States of America.  The plaintiff's Complaint alleges that MPD officers' conduct was negligent.

In pertinent part, the Complaint states that the defendants owed the Plaintiff "the duty to exercise

reasonable care in the performance of their respective duties" and that "[a]s a direct and

proximate result of the defendant negligence, Plaintiff[s] Gibson [and Hawkins] incurred

costs…"(Complaint, Count I – "Negligence" - ¶ 19 and ¶ 28).

      To date, the plaintiffs have not alleged that the MPD officers involved in the accident

displayed conduct that was *grossly* negligent.  The plaintiff's Complaint, Answers to

Interrogatories, and deposition testimony all focus on the District's alleged *negligence*, but they

---

[2] Plaintiff Gibson has testified that neither police vehicle had activated its lights and sirens at the
time of the accident. (Exhibit F, Rolan Gibson Depo. Pages 30).  However, as argued later, this dispute is
inconsequential as a matter of law. See pages 6 -7.

do not allege any facts that could lead to an inference of bad faith, intent, or gross negligence on

the part of MPD Officer's Watkins or Gulich.

*Argument*

I.     **THE DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW,
       BECAUSE THE PLAINTIFFS' COMPLAINT ONLY STATES CLAIMS OF
       NEGLIGENCE AND THEREFORE DOES NOT STATE A CLAIM UPON
       WHICH RELIEF CAN BE GRANTED ON THESE FACTS.[3]**

*Standard of Review*

To be entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a movant

must show, at the close of pleadings, that no genuine issue of material fact remains to be

resolved. *Terry v. Reno*, 322 U.S. App. D.C. 124, 135, 101 F.3d 1412, 1423 (1996). A court

must view the facts presented in the pleadings and the inferences to be drawn therefrom in the

light most favorable to the nonmoving party. *Peters v. National R.R. Passenger Corp.*, 296 U.S.

App. D.C. 202, 966 F.2d 1483, 1485 (1992). A pleading's legal conclusions are not deemed

admitted. *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 178 n.2 (7th

Cir. 1986). "A court will grant a motion for judgment on the pleadings only if, after the close of

the pleadings, no material fact remains in dispute, and the moving party is entitled to judgment as

a matter of law." *Summers v. Howard Univ.*, 127 F. Supp. 2d 27, 29 (D.D.C. 2000) (*quoting*

---

[3] The plaintiffs allege two claims in their complaint. The first is a claim of Negligence, and the
second is one of Negligent Infliction of Emotional Distress. As will be discussed below, the plaintiffs
have failed to state a claim because the facts of this case require a *gross negligence* analysis. The plaintiff
have neither alleged facts in their Complaint nor put forth evidence during discovery that state a claim of
*gross negligence*. Therefore, the plaintiffs' Negligence claim must be dismissed. Likewise, since one of
the elements of Negligent Infliction of Emotional Distress in obviously a showing of Negligence, Count
II of the plaintiffs' Complaint is subsumed and must be dismissed. *District of Columbia v. Evans*, 644
A.2d 1008, 1019 (D.C. 1994); *Williams v. Baker*, 572 A.2d 1062, 1067, 1073 (D.C. 1990); *Jones v.
Howard Univ., Inc.*, 589 A.2d 419 (D.C. 1991).

4

*Transworld Prods. Co. v. Canteen Corp.*, 908 F. Supp. 1 (D.D.C. 1995)). In other words, judgment on the pleadings is only warranted where it appears beyond doubt that the Plaintiff will be unable to prove any facts to support the alleged claims for relief. *See, e.g. Horsley v. Rivera,* 292 F.39 695, 700 (11th Cir. 2002).

Pursuant to Fed. R. Civ. P. Rules Civil 12(c) and 56(c), the District is entitled to judgment as a matter of law because the plaintiff's Complaint does not state an actionable claim. It this case, the MPD police cruiser was on an emergency run at the time of the accident. As such, the District cannot be held liable for mere negligence; the plaintiff must prove *gross negligence* to establish the District's liability. D.C. Code §§ 2-411, 2-412. Plaintiff's Complaint fails to allege gross negligence on the part of the District, or set forth facts from which such an inference could be made. Thus, the Complaint does not state a claim upon which relief can be granted, and the District is entitled to judgment as a matter of law.

### A. Metropolitan Police Department Officers Watkins and Gulich Were In an Emergency Vehicle On an Emergency Run at the Time of the Accident

Under the District of Columbia Employee Non-Liability Act, the District waived its governmental immunity to damage suits for personal injury caused by the wrongful operation of a District vehicle by a District employee acting within the scope of employment. D.C. Code § 2-412 (2001). The Act, however, expressly limits this waiver by providing "in the case of a claim arising out of the operation of an emergency vehicle on an emergency run, the District shall be liable only for gross negligence." D.C. Code § 2-412 (2001). Because waivers of immunity must be read narrowly, limitations on a waiver of immunity, such as the gross negligence provision, "are to be read broadly." *District of Columbia v. Walker,* 689 A.2d 40, 42 (D.C.1997).

Here, the MPD cruiser involved in the accident was an emergency vehicle operating on an emergency run.  The statute defines the term "emergency run" expansively.  *Duggan v. District of Columbia*, 884 A.2d 661, 663 (D.C. 2005).  D.C. Code § 2-411(4) defines "emergency run" as:

> The movement of a District-owned vehicle, by direction of the operator of some other authorized person or agency, under circumstances which lead the operator or such persons or agency to believe that such vehicle should proceed expeditiously upon a particular mission or to a designated location for the purpose of dealing with a supposed fire or other emergency, an alleged violation of a statute or regulation, or other incident requiring emergency action.

The D.C. Court of Appeals has further held that the emergency run statute does not require that the vehicle's emergency lights and siren be activated to qualify as an emergency run.  *Abney v. District of Columbia*, 580 A.2d 1036, 1041 (D.C. 1990).  In *Abney*, the trial court had instructed the jury that a Metropolitan Police officer could be considered to be on an emergency run only where "the officer is driving in an emergency vehicle with both the over head lights and siren activated."  *Id.* at 1040.  The D.C. Court of Appeals reversed the trial court's decision, holding that "the trial court erred in limiting the definition of 'an emergency vehicle' to a police car 'with both the over head lights and siren activated.'"  *Id.* at 1041.

In addition, the D.C. Court of Appeals has held that, under the plain language of the statute, the determination of whether a vehicle is on an emergency run is based upon the perceptions of the operator of the vehicle.  *Browner v. District of Columbia*, 756 A.2d 927, 929 (D.C. 2000).

Here, at the time of the accident, it is beyond dispute that Officers Watkins and Gulich were in an emergency vehicle on an emergency run.  In the minutes leading up to the accident, Officers of the MPD were assisting the Park Police with their vehicular pursuit of a suspect believed to have committee an assault on a police officer.  (Exhibit A, Watkins Depo. Page 100).

6

It is likewise indisputable that all officers were then alerted to an emergency situation. MPD Officers Watkins and Gulich and Park Police Officer Houghton have all testified that they received a call for "shots fired" in the moments prior to the accident. (Exhibit A, Watkins Depo. Page 51, Exhibit D, Gulich Depo. Pages 44 and 51, Exhibit C, Houghton Depo. Pages 19 and 60).

Furthermore, the plaintiffs have provided no material evidence to dispute this fact. Indeed, both plaintiffs testified at there depositions that they had heard gun shots fired prior to the accident that gave rise to this case. (Exhibit E, John Hawkins Depo. Pages 11-12, and Exhibit F, Rolan Gibson Depo. Pages 26 – 27)

Plaintiff Gibson has testified that neither police vehicle had activated its lights and sirens at the time of the accident. (Exhibit F, Rolan Gibson Depo. Pages 30). However, even if the Court were to credit this testimony, this fact alone is not relevant to the legal issue now before this Court. The D.C. Court of Appeals has held that, as a matter of law, the activation of lights and sirens are not relevant to whether an officer is on an emergency run. *Abney*, 580 A.2d at 1041. As such, the plaintiff has presented no material evidence to dispute the fact that the MPD Officers involved in this case were on an emergency run at the time of the accident.

**B.      The District Is Entitled to Judgment as a Matter of Law Because the Plaintiff's Complaint Does Not Allege or Infer Gross Negligence.**

The plaintiff's Complaint fails to allege that the conduct of the MPD Officers' involved in the accident was grossly negligent, nor can such an inference be made from the facts alleged in the Complaint. As such, the District is entitled to judgment as a matter of law.

The D.C. Court of Appeals has written numerous decisions regarding what conduct constitutes "gross negligence" for purposes of the emergency run statute. *District of Columbia v. Hawkins*, 782 A.2d 293, 300 (D.C. 2001); *District of Columbia v. Henderson*, 710 A.2d 874, 876

(D.C. 1998); *District of Columbia v. Walker*, 689 A.2d 40, 44-45 (D.C. 1997); *District of Columbia v. Banks*, 646 A.2d 972, 977 (D.C. 1994). The court has defined "gross negligence" to require "such an extreme deviation from the ordinary standard of care as to support a finding of *wanton, willful and reckless disregard* or *conscious indifference* for the rights and safety of others." *Hawkins*, 782 A.2d at 300 (*quoting Walker*, 689 A.2d at 44) (emphasis added); *Henderson*, 710 A.2d at 876. Furthermore, "[t]his standard has been held to connote that the actor has engaged in conduct so extreme as to imply some sort of bad faith." *Henderson*, 710 A.2d at 876.

Here, the plaintiffs' Complaint neither alleges gross negligence nor does it allege facts that could allow for a reasonable inference of gross negligence. The plaintiffs' Complaint alleges that MPD officers' conduct was "negligent." In pertinent part, the Complaint states that the defendants owed the Plaintiff "the duty to exercise reasonable care in the performance of their respective duties" and that "[a]s a direct and proximate result of the defendants' negligence, Plaintiff[s] Gibson [and Hawkins] incurred costs…"(Complaint, Count I – "Negligence" - ¶ 19 and ¶ 28).

First, it is important to note that the Complaint, while making repeated references to the defendants' alleged "negligence", does not expressly allege that MPD acted with "gross negligence." It is also noteworthy that Count I of the plaintiff's Complaint is specifically styled as a count of "Negligence" and Count II is styles as a on of "Negligent Infliction of Emotional Distress." The strongest language contained in the Complaint alleges that Officer Watkins entered the intersection at 61st and Clay street with "excessive speed and reckless disregard" for the vehicles in the in the intersection. (Complaint, ¶ 14). However, the mere use of the word "reckless," when read with the language in the four corners of the complaint, is insufficient to

satisfy the standard for gross negligence set forth by the D.C. Court of Appeals. Instead, a plaintiff must put forth facts to show "an *extreme* deviation from the ordinary standard of care," to indicate "wanton, willful and reckless disregard" for the safety of others. *Hawkins*, 782 A.2d at 300 (*quoting Walker*, 689 A.2d at 44); *Henderson*, 710 A.2d at 876. In fact, the D.C. Court of Appeals has taken this one step further, requiring an allegation of some sort of "bad faith" on the part of the defendant driver. *Henderson*, 710 A.2d at 876.

Second, the plaintiff's Complaint fails to allege sufficient facts that could lead to an inference of such willful or wanton conduct, and the allegations of wrongdoing in the Complaint alludes to a *negligence* standard, not a gross negligence standard. For example, the Complaint alleges that defendants disregarded his "duty to exercise reasonable care" in carrying out their work duties. (Complaint, ¶ 19.) This language is associated with the standard of care in *negligence* actions. It cannot, in and of itself, allow for an inference of such an extreme deviance from the standard of care such that it could constitute willful, wanton, and reckless conduct.

Even with all inferences made in favor of the plaintiff, the Complaint does not allege gross negligence. As such, the plaintiff's Complaint does not state a claim upon with relief can be granted, and the District is entitled to judgment as a matter of law.

## II.      THE DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW, BECAUSE NO REASONABLE JURY COULD CONCLUDE THE OFFICER MPD OFFICERS ACTED WITH GROSS NEGLIGENCE.

Even if the plaintiff's Complaint had properly alleged gross negligence, the District would be entitled to summary judgment, because the facts elicited throughout discovery cannot support such an inference.

### *Standard of Review*

Summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Although the party moving for summary judgment has the burden of demonstrating the absence of any material facts and the right to judgment as a matter of law, the movant is not obligated to present supporting evidence. *Furguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993). Instead the moving party need only assert that there is a lack of necessary evidence to support plaintiff's case. At that point, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.; Beard v. Area Transit Authority,* 631 A.2d 387, 390 (D.C. 1993). Theoretical speculations, unsupported assumptions, and conclusory allegations do not rise to the level of a genuine issue of fact. *Id*.

No reasonable jury could conclude that the MPD officers acted with gross negligence at the time of the accident. "[G]ross negligence is a very difficult standard to prove," the D.C. Court of Appeals noted. *Walker*, 689 A.2d at 49, n. 19. The court recognized, "the legislature has made a policy decision not to hold the District liable in such situations unless gross negligence is demonstrated." *Id.* To prove gross negligence, a plaintiff must show bad faith on the part of the defendant. *Hawkins*, 782 A.2d at 300 (*citing Walker*, 689 A.2d at 44); *Henderson*, 710 A.2d at 876. Where there is no evidence of subjective bad faith, "the extreme nature of the conduct may be shown by demonstrating that the actor acted in such disregard of a risk 'so obvious that [the actor] must be taken to be aware of it and so great as to make it highly probable that harm would follow.'" *Henderson*, 710 A.2d at 876.

Here, there is *no* evidence that the MPD Officers involved in the accident acted in subjective bad faith. Nowhere in his pleadings, discovery, or deposition have the plaintiffs suggested that Officers Watkins or Gulich bore him any ill will, or acted intentionally, willfully, or with wanton disregard for the plaintiff's safety. As such, in order to sustain this action, the plaintiff must set forth facts to prove that Officers Watkins and Gulich disregarded a risk so obvious that they *must have been aware of it*, and so severe that it was *highly probable that harm would follow*. The plaintiffs cannot show facts to support such an inference, therefore, judgment should be entered in the District's favor as a matter of law. *Id.*

The D.C. Court of Appeals' emergency run case law illustrates the facts that must be proven before a plaintiff is entitled to an inference of gross negligence. In *Walker*, a high-speed police chase led to a fatal automobile accident. 689 A.2d at 41. The decedent's husband sued the District, alleging gross negligence on the part of the officers chasing the suspect. *Id.* The plaintiff's expert set forth numerous facts to support the allegations gross of negligence, including:

> the time of day and week (Saturday afternoon) indicating a lot of vehicular and pedestrian traffic; the urban nature of the area in which the pursuit began; the speed involved; the young age of the [pursued] driver; the fishtailing of the Toyota as it entered Suitland Parkway; the officers' "mimicking" of the driver's behavior in running red lights on Alabama Avenue and driving the wrong way on the one-way portion of Sixth Street; the officers' failure to comply with requirements in MPD General Order 301.3 regarding approaches to traffic lights; the fact that the driver's traffic violations did not begin until after the police began pursuing him; and the lack of seriousness of the offense, which lowered the need for immediate apprehension.

*Id.* at 45-46.

Despite this testimony, the D.C. Court of Appeals held that, as a matter of law, no reasonable jury could find that the conduct "amounted to such an extreme deviation from the reasonable standard of care as to constitute gross negligence on the part of the MPD officers."

11

*Id.* at 48; *see also Henderson*, 710 A.2d at 875, 877 (no gross negligence as a matter of law where two police cruisers—on dark, wet, and slippery night—were speeding, failed to slow or stop at intersection, and hit plaintiff's lawfully operated vehicle).

In fact, the only applicable case in which the D.C. Court of Appeals has *upheld* an emergency run jury verdict was its 2001 *Hawkins* decision.[4]  *Hawkins*, 783 A.2d at 303.  There, the facts truly demonstrated an *extreme* deviation from the standard of care.  The police had chased a suspect through "a residential area of the city, where private homes and multi-unit apartment buildings and schools were located. … The chase and ensuing accident happened during the rush hour, at a busy intersection for vehicular and pedestrian traffic."  *Id.* at 301.  Furthermore, the court noted that the police officers *knew* the intersection where the accident occurred would be crowded during that time of day.  The suspect's speed was 83 to 90 miles per hour as he entered the intersection, with the police following directly behind him.

Finally, and "[m]ost importantly," the court noted that:

> as the police knew, the roadway (Ely Place) had a crest which obstructed the view of what was on the other side of the hill.  Thus, as the trial court pointed out, the evidence showed that "these officers were driving at an excessively high rate of speed without knowing what faced them, or the Nissan Pathfinder they were pursuing, over the crest of the hill."

---

[4] In *Duggan v. District of Columbia*, the D.C. Court of Appeals reversed the trial Court's granting of judgment as a matter of law in the District's favor on an emergency run case. However, the Court's ruling was limited to the facts of that case and did not overturn prior precedent. 884 A.2d 661 (D.C. 2005).  In that case, the factual issue was centered on the MPD Officer's *decision to pursue* a fleeing suspect, and it was the suspect's vehicle that collided with a bystander.  The facts in *Duggan* are easily distinguishable from those presently before the Court.  In this case, the MPD officers were responding to a call of "shots fired" which is indisputably an exigent circumstance.  Further, in this case, it was the MPD vehicle itself which was involved in an accident.

*Id.* at 301-02.  The D.C. Court of Appeals held that, "viewing the evidence in the light most favorable to appellees, as we must, we cannot say that no reasonable juror could have found that the police officer's conduct was grossly negligent in this case."  *Id*. at 303.

Here, the facts alleged by the plaintiff do not even rise to the level of the *least* severe situation cited above.  Unlike the officers in *Walker*, 689 A.2d at 44, Officer Watkins was not operating his car at a busy vehicle and pedestrian intersection during rush hour, nor was he going the wrong way down one-way roads. (Exhibit B, MPD Police Report).  The traffic conditions at that time of the day were "light", and unlike the officers in *Henderson*, 710 A.2d at 876, Officer Watkins was not attempting to maneuver on a wet, slippery road. (Exhibit B, MPD Police Report).  The whether conditions on that day were "clear" and "dry"; the road surface at this intersection was "straight."  (Exhibit B, MPD Police Report).  The facts in both *Walker* and *Henderson*, although much more egregious than those in Officers Watkins and Gulichs' situation, were found insufficient to support a jury verdict.  *Henderson*, 710 A.2d at 876; *Walker*, 689 A.2d at 44.

From these facts, it is difficult to imagine a jury finding of mere *negligence*, let alone *gross negligence*.  The police officers in *Walker*—who engaged in a high-speed rush-hour pursuit through red lights and the wrong way on one-way roads, with foreknowledge of heavy pedestrian and vehicular traffic—were not grossly negligent as a matter of law.  Certainly, then, Officers Watkins and Gulichs' conduct cannot possibly be grossly negligent.  The police officers in *Henderson*—who engaged in a high-speed chase on a dark, wet, and slippery night and failed to slow or stop at an intersection—were not grossly negligent as a matter of law.  Officers Watkins and Gulichs' conduct was much less risky than that in *Henderson*, so the District cannot be held grossly negligent.

13

Finally, and most importantly, there is simply no evidence to suggest that Officers Watkins and Gulich disregarded "a risk 'so obvious that [the actor] must be taken to be aware of it and so great as to make it highly probable that harm would follow.'" *Henderson*, 710 A.2d at 876. Without such evidence, no such inference can be made. As such, the District is entitled to judgment as a matter of law, and summary judgment must be granted on all claims against it.

WHEREFORE, the District of Columbia, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(c) and 56(c), hereby moves that this Honorable Court grant the District judgment on the pleadings. In the alternative, the District moves that this Court grant summary judgment in its favor.

<div style="margin-left:40%">

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General,
Civil Litigation Division


_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Sec. III


_____/s/_____
JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov

</div>

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROLAN GIBSON,** *et al.,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil No.  06-0551 (JMF)** |
| **v.** ) | |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

### DEFENDANT DISTRICT OF COLUMBIA'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Comes now defendant District of Columbia ("the District"), by and through undersigned counsel and pursuant to SCR-Civ 12-I(k), and hereby submits the following statement of material facts as to which there is no genuine issue:

1. This case arises out of an accident between a Metropolitan Police Department ("MPD") vehicle occupied by driver Officer Marvin Watkins and passenger Officer Gary Gulich, a United States Park Police ("Park Police") vehicle occupied by Officer Donald Houghton, and the Plaintiff's vehicle.

2. The accident occurred on or about December, 8, 2004, at approximately 3:30 in the afternoon, in the intersection of 61st Street and Clay Street, NE, in the District of Columbia.  (Complaint, ¶ 23.)

3. The whether conditions on that day were "clear" and "dry"; the road surface at this intersection was "straight"; and the traffic conditions at that time of the day were "light." (Exhibit B, MPD Police Report).

4.  There is no testimony or other evidence in the record that there were any pedestrians in or near the intersection at the time this accident.

1

5.  In the minutes leading up to the accident Officers of the MPD were assisting the Park
    Police with their vehicular pursuit of a suspect believed to have committee an assault on a
    police officer.  (Exhibit A, Watkins Depo. Page 100).  This pursuit culminated in the area
    of 60th and Clay Street.  (Exhibit C, Houghton Depo. Page 20).

6.  Moments prior the accident, a call for "shots fired" went out over both the MPD radio
    channel and the Park Police radio channel.  (Exhibit A, Watkins Depo. Pages 51 - 52,
    Exhibit D, Gulich Depo. Pages 44 and 51).

7.  Both MPD officers instantly determined that this call constituted an emergency situation
    and immediately began to respond to the area where this emergency had occurred.
    (Exhibit A, Watkins Depo. Pages 51 - 52, Exhibit D, Gulich Depo. Pages 44 and 51).

8.  At the time of the accident the automobile driven by Park Police officer Donald
    Houghton was traveling west toward the four-way stop sign intersection of 61st Street and
    Clay in the Direction of where the pursuit had culminated.  (Exhibit B, MPD Police
    Report).

9.  As Officer Houghton entered the intersection he was traveling between 30 and 50 miles
    per hour. (Exhibit C, Houghton Depo. Page 29).

10. The MPD vehicle was traveling north on 61st Street toward the intersection with Clay
    Street.  (Exhibit B, MPD Police Report).

11.  Park Police Officer Houghton estimated that the MPD vehicle was traveling
    approximately forty-five miles per hour. (Exhibit C, Houghton Depo. Page 35).

12. The vehicle occupied by the Plaintiffs' was stopped in the area at or near the stop sign
    pointing south on 61st Street.  (Exhibit B, MPD Police Report).

2

13. The impact of the collision caused both vehicles to strike the plaintiffs' car. (Exhibit B, MPD Police Report, Exhibit C, Houghton Depo. Page 31).

14. On March 22, 2006, the plaintiff filed this action against the District and the United States of America.  The plaintiff's Complaint alleges that MPD officers' conduct was negligent. (Complaint)

15. The Complaint states that the defendants owed the Plaintiff "the duty to exercise reasonable care in the performance of their respective duties" and that "[a]s a direct and proximate result of the defendant negligence, Plaintiff[s] Gibson [and Hawkins] incurred costs…"(Complaint, Count I – "Negligence" - ¶ 19 and ¶ 28).

16. To date, the plaintiffs have not alleged that the MPD officers involved in the accident displayed conduct that was *grossly* negligent.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General,
Civil Litigation Division


_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Sec. III

_____/s/_____
JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ROLAN GIBSON,** *et al*., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil No.  06-0551 (JMF)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## O RD E R

Upon consideration of the Defendant District of Columbia's Motion for Judgment on the

Pleadings, the Memorandum of Points and Authorities attached in support thereof, any

opposition thereto, and the entire record herein, it is on this ___ day of _____, 2007,

that the Court hereby:

ORDERS that the Motion is GRANTED;

and it further,

ORDERS that the plaintiff's case and the is DISMSSED with prejudice.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


Cc:    Joel DuBoff, Esq.
       DuBoff & Associates, Chartered
       8401 Colesville Road, Suite 501
       Silver Spring, MD 20910

Michelle N. Johnson
Assistant United States Attorney
555 4th St. N.W. Room E4212
Washington , D.C. 20530


James H. Vricos
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ROLAN GIBSON,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil No.  06-0551 (JMF)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**O R D E R**

Upon consideration of the Defendant District of Columbia's  Motion for Summary

Judgment, the Memorandum of Points and Authorities and Exhibits attached in support thereof,

any opposition thereto, and the entire record herein, it is on this ___ day of _____,

2007, that the Court hereby:

ORDERS that the Motion is GRANTED;

and it further,

ORDERS that the plaintiff's case and is DISMISSED with prejudice.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


Cc:    Joel DuBoff, Esq.
       DuBoff & Associates, Chartered
       8401 Colesville Road, Suite 501
       Silver Spring, MD 20910

Michelle N. Johnson
Assistant United States Attorney
555 4th St. N.W. Room E4212
Washington , D.C. 20530


James H. Vricos
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600