# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA
# Civil Division

| | |
|---|---|
| **ROLAN GIBSON, et al.** * | |
| Plaintiffs, * | |
| * | |
| v. * | |
| * | Case No. 1:06CV00551 |
| **UNITED STATES OF AMERICA** * | Magistrate Judge: John M. Facciola |
| * | |
| and * | |
| * | |
| **DISTRICT OF COLUMBIA** * | |
| **GOVERNMENT** * | |
| Defendants. * | |

* * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Roland Gibson and John Hawkins by and through Joel DuBoff, Esquire and DUBOFF & ASSOCIATES, CHARTERED pursuant to all applicable rules of this Court, respectfully submits to this Honorable Court, an Opposition to Defendant United States of America's Motion for Summary Judgment and for cause further states as follows:

1. Defendant has failed to establish that it is entitled to summary judgment.

2. There exists genuine issues of fact material to this case and the Defendant is not entitled to judgment as a matter of law.

3. Plaintiffs' incorporate by reference thereto as if fully set forth herein any fact, argument, and/or law contained within the Plaintiff's Opposition to Defendant District of Columbia Motion for Judgment on the Pleadings or for Summary Judgment.

4. Plaintiff's position in opposition is more fully set forth in the accompanying Memorandum of Points and Authorities incorporated herein by reference.

5.      Plaintiff's Statement of Material Facts in Dispute and a Proposed Order are attached hereto.

WHEREFORE, Plaintiffs Gibson and Hawkins, for the foregoing reasons, respectfully request that this Honorable Court deny Defendant United States of America's Motion for Summary Judgment and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

By:   *Joel DuBoff*
Joel DuBoff
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131   Office
(301) 587-1872   Facsimile

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___ day of June, 2007 a copy of the foregoing Opposition to Defendant United States of America's Motion for Summary Judgment, Memorandum of Points and Authorities regarding the same and a Proposed Order were served via this Court's Electronic Case Filing System to:

Michelle N. Johnson, Esquire
Assistant United States Attorney
555 4th Street, N.W., Room E4212
Washington, D.C. 20530

James Vricos, Esquire
Assistant Attorney General
Civil Litigation Division
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001

*Joel DuBoff*
Joel DuBoff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
Civil Division

| | | |
|---|---|---|
| **ROLAN GIBSON, et al.** | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Case No. 1:06CV00551 |
| **UNITED STATES OF AMERICA** | * | Magistrate Judge: John M. Facciola |
| | * | |
| and | * | |
| | * | |
| **DISTRICT OF COLUMBIA** | * | |
| **GOVERNMENT** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **EXHIBIT LIST**

1. Police Report of the Metropolitan Police Department
2. Deposition of Officer Houghton
3. Deposition of Sgt. Wade
4. Complainant/Witness Statement of Plaintiff Hawkins
5. Deposition of Officer Gulich
6. Deposition of Officer Watkins
7. Deposition of Plaintiff Gibson
8. Deposition of Plaintiff Hawkins

9A.  Photograph
9B.  Photograph
9C.  Photograph
9D.  Photograph
9E.  Photograph
9F.  Photograph

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

| | | |
|---|---|---|
| **ROLAN GIBSON, et al.** | * | |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | |
| | * | Case No. 1:06CV00551 |
| **UNITED STATES OF AMERICA** | * | Magistrate Judge: John M. Facciola |
| | * | |
| and | * | |
| | * | |
| **DISTRICT OF COLUMBIA** | * | |
| **GOVERNMENT** | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * * * * * * * * * * *

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT</u>**

Plaintiffs Roland Gibson and John Hawkins by and through Joel DuBoff, Esquire and DUBOFF & ASSOCIATES, CHARTERED and pursuant to all applicable rules of this Court, respectfully submits to this Honorable Court, the following memorandum of Points and Authorities is Support of Plaintiffs' Opposition to Defendant United States of America's Motion for Summary Judgment and for cause further states as follows:

**FACTS**

This is a case involving a collision between a District of Columbia (hereafter "DC") Metropolitan Police Department (hereafter "MPD") vehicle driven by Officer Marvin Watkins (hereafter "Watkins") and passenger Officer Gary Gulich (hereafter "Gulich"), a United States Park Police (hereafter "Park Police") vehicle operated by Officer Donald Houghton (hereafter "Houghton") which culminated in both police vehicles separately slamming into a stopped civilian vehicle being operated by Plaintiff Rolan Gibson (hereafter "Gibson") along with his

passenger Plaintiff John Hawkins (hereafter "Hawkins"). (Complaint ¶ 23)

The collision that began the above captioned claim occurred on December 8, 2004 post 3:30 in the afternoon at the intersection of Clay Street and 61st Street, North East in the District of Columbia. (Exhibit 1 - Police Report of the MPD) It is undisputed by the parties that the weather conditions on the date in question were clear and the roads were dry. (*Id*.) It is also undisputed that the Plaintiffs' did nothing wrong (Exhibits 2, 5, & 6)

Upon information and belief the Park Police were involved in a vehicular chase involving a black jeep, which began up in Laurel, Maryland and eventually crossed into the District of Columbia. (Exhibit 2 - Deposition of Houghton Pages 12-13) As the chase crossed into the District of Columbia the MPD officers were advised by field supervisor Sgt Felicia Wade to monitor the situation and not to participate in the chase. (Exhibit 3 - Deposition of Wade Page 44 lines 15-16 & 18-20; Exhibit 6 - Watkins Depo Page 98)

At the time of this major collision, the Park Police vehicle driven by Houghton was traveling westbound on Clay Street while the MPD vehicle driven by Watkins was traveling northbound on 61st street and the Plaintiffs' vehicle was facing southbound on 61st street and was stopped. (Exhibit 2 Page 20; Exhibit 1) Both police vehicles were approaching the four-way stop sign at the intersection of 61st and Clay Street at right angles, and the Plaintiffs' vehicle was stopped just prior to the intersection in the opposite direction of the MPD cruiser. (Exhibit 1 & Exhibit 4 - Complainant/Witness Statement of Plaintiff Hawkins) The speed limit at the location of the collision was 25 miles per hour. (Exhibit 1)

Contemporaneously with the pursuit Officer Watkins and Gulich were advised that their relief was up and to report back to the station. Officer Watkins and Gulich stated that they needed more time and advised that they were not returning to the station and in fact Officers

Gulich and Watkins had joined in the pursuit prior to making the determination to drop out and sit and wait. (Exhibit 5) Said pursuit was illegal and countermanded by a superior officer who advised MPD units at least three times to not join in the pursuit and to only monitor the situation. (Exhibit 3 page 44 lines 15-16 and 18-20)

    While other MPD vehicles may have been assisting the Park Police during the pursuit of the suspect Jeep, Officers Gulich and Watkins had dropped out of any proper or authorized pursuit and had allegedly stopped their cruiser immediately prior to the crash for approximately two minutes (Exhibit 5 - Gulich Deposition Page 89 Lines 19-20) and had turned off all sirens and lights so as to conceal themselves in case the suspects had bailed out of the Jeep and started heading towards the MPD cruiser then Officer Watkins and Gulich could apprehend the suspects. (Exhibit 5 Page 45 Lines 1-13)  Officer Gulich clearly admits that the cruiser was stopped with no lights and sirens and that he and Officer Watkins were not actively participating in anything involving the Park Police pursuit and were in actuality just waiting to assist if they were needed at the conclusion of the pursuit.

    There is a major dispute as to the speed of the police vehicles involved in the collision. Houghton claims that his Park Police cruiser was traveling between 30 and 50 miles per hour before he came to the intersection in question while Officer Watkins claims that Officer Houghton was traveling at a high rate of speed. (Exhibit 2 Page 22 Lines 16-20; Exhibit 6 - Watkins Depo Page 148 Lines 9-10)  The MPD cruiser, per Gulich, was going no faster than 10 miles per hour while Houghton believes that the MPD vehicle was traveling about forty-five miles per hour. (Exhibit 5 Page 47 Line 22 to Page 48 Line 2; Exhibit 2 Page 34 Line 21 to Page 35 Line 2)  Plaintiff Gibson has testified that the Park Police vehicle was traveling between 60

and 75 miles per hour and that the MPD vehicle was traveling about the same speed. (Exhibit 7 - Gibson Depo P 103 line 22 to Page 104 line 4 and 14-19)

The Plaintiffs' vehicle was stopped on Clay Street "when a lot of police vehicles was chasing a Jeep so we stop and did not move. Next thing I no we was hit." (Exhibit 4 (Spelling and grammatical errors in original))

Plaintiff Gibson has testified that that the two police cruisers involved in the subject collision did not have on any lights or sirens as they approached and entered the intersection. (Exhibit 7 Page 30 Lines 2-11) Officer Watkins has also testified that he did not hear any sirens from Officer Houghton's vehicle prior to the collision. (Exhibit 6 Page 94 lines 2-7). The three officers involved in the above captioned claim have each stated that their lights and sirens were activated. (Exhibit 5 Page 47 Lines 10-11; Exhibit 6 Page 80 Lines 9-11; Exhibit 2 Page 30 Lines 9-11) Officer Gulich claims that he never saw the Park Police car until his vehicle was spinning around despite the fact that he claims to have looked to his right before entering the intersection. (Exhibit 5 Page 52 Lines 5-8)

Houghton allegedly braked 20 yards before the intersection slowing to 30 miles per hour, he claims that he looked to his left and right to make sure the intersection was clear. (Exhibit 2 Page 21) Houghton allegedly saw nothing to his left, the direction the MPD cruiser was approaching from prior to his entering the intersection. (Exhibit 2 Page 21)

Gulich has testified that he does not recall if his brand new (6 weeks old) MPD cruiser stopped or just rolled thru the intersection while Officer Watkins, a rookie only out of the academy 2 months, claims that he came to a complete stop. (Exhibit 6 Page 51 Lines 13-15 and Exhibit 5 Page 48 Lines 11-14) Officer Houghton has testified that he saw the MPD cruiser before it entered the intersection when it was still behind the stop sign on 61st Street. (Exhibit 2

Page 25 Line 10 to Page 26 Line 8) Further, Officer Houghton has stated that he did not observe the MPD cruiser slowing down for the stop sign before it entered the intersection. (Exhibit 2 Page 35 lines 6-14)

Upon noticing the MPD cruiser Officer Houghton stated that he moved his vehicle to the right in an attempt to avoid the collision. Houghton further testified that the MPD cruiser T-boned his vehicle and Officer Watkins has stated that his cruiser hit the Park Police cruiser. (Exhibit 2 Page 64 lines 6-11 and Exhibit 6 Page 94 lines 17-25) The MPD cruiser and the Park Police cruiser collided forcing the Park Police cruiser into the Plaintiffs' vehicle and then continued off the road, jumping the curb, up some steps to the front of a residential house and into a nearby yard (Exhibit 1) When the MPD cruiser and the Park Police cruiser hit the MPD cruiser was spun 180 degrees around so that the back of the MPD car hit the drivers side of the Plaintiffs' vehicle bashing the Plaintiffs' into a telephone pole at the corner of 61st and Clay streets (Exhibit 2 Page 21 Lines 1-9; Exhibit 5 Page 52 lines 7-11 & 23-25; Exhibit 8 - Hawkins Depo Page 23 Lines 3-12 and Exhibit 9A-F - Photos)

Prior to Officer Watkins and Gulich becoming involved in the subject collision they were informed that their relief was up and to return to the station. (Exhibit 3 P 39 Line 23 to Page 40 line 1) When Sgt. Wade arrived at the scene of the collision she has testified that the MPD vehicle did not have any lights or sirens activated. (Exhibit 3 Page 84 lines 5-8)

## STANDARD OF REVIEW

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d. 202, 106 S. Ct. 2505 (1986). In deciding a motion for summary judgment the district court is obligated to view the available evidence in the light

most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Popham, Haik, Schnobrich, Kaufman & Dotty, Ltd. V. Newcomb Securities Co.*, 243 U.S. App. D.C. 43, 751 F.2d 1262, 1263 (D.C. Cir. 1985) ("any doubt is to be resolved against the moving party"). In *Anderson*, the Supreme Court made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

The moving party bears the burden of demonstrating the absence of any genuine issue of material facts. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Richardson v National Rifle Association,* 871 F. Supp. 499 (D.D.C. 1994). The defendant is thus entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

The Court's threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury <u>might</u> return a verdict in his favor. If he does so, there is a genuine issue of fact that requires trial." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added).

"The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." *Wallace,* 1998 D.C.App. LEXIS 9, at *9; *McBryde v. Amoco Oil Co.,* 4040 A.2d 200, 203 (D.C. 1979). In addition, all ambiguities must be resolved in plaintiff's favor. *See Bible Way Church of Our Lord Jesus*

*Christ of the Apostolic Faith v. Beards,* 680 A.2d 419, 430 (D.C. 1996). Given these considerations, "unless it is beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," a pleading should not be dismissed. *Id*.

Under a Rule 56 analysis, defendant's motion must fail as plaintiff has adequately stated claims upon which relief can be granted.

## **ARGUMENT**

Plaintiffs' incorporate by reference thereto as if fully set forth herein any fact, argument, and/or law contained within the Plaintiff's Opposition to Defendant District of Columbia Motion for Judgment on the Pleadings or for Summary Judgment and the Memorandum of Points and Authorities attached thereto.

In order not to be duplicative the Plaintiffs' will refrain from restating the law as it pertains to the United States' waiver of immunity or the Federal Tort Claims Act as Defendant U.S.A. has stated the applicable law on pages 5 and 6 of their Memorandum of Law in Support of its Motion for Summary Judgment.

An "authorized emergency vehicle." under DCMR §2210.1 is defined as a vehicle using visible lights and an audible signal. When the facts detailed above are viewed in a light most favorable to the non-moving party, it is clear that the Park Police cruiser was not operating the emergency lights on his vehicle or its siren or any other audible device at the time of the accident in question as required by 18 D.C.M.R §2210.1. Therefore this Defendant was in direct violation of the DC Municipal Regulations.

Based on the police reports and the depositions of the parties and the officers involved in this matter, there are clear material facts in dispute as to whether or not the Park Police vehicle was operating their lights and sirens at the time of the crash, whether or not the Park Police

cruiser was legally operating as an authorized emergency vehicle, and whether or not the Park Police cruiser was on an emergency run.

An "authorized emergency vehicle." under 18 DCMR §2210.1 is defined as a vehicle using visible lights and an audible signal. 18 D.C.M.R. §2002.3, which states quite clearly "The exemption granted in this section to an authorized emergency vehicle <u>shall only apply when the driver of the vehicle while in motion sounds an audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped as specified in §712 of this title.</u>" (Emphasis added)

18 D.C.M.R. § 2002.4 states "The provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall these provisions protect the driver from the consequences of his reckless disregard for the safety of others."

It is disputed as to whether or not Officer Houghton was operating with his lights and sirens activated, as Plaintiff Gibson has testified that that the two police cruisers involved in the subject collision did not have on any lights or sirens as they approached and entered the intersection. Officer Watkins has also testified that he did not hear any sirens from Officer Houghton's vehicle prior to the collision.

This Defendant fails to point out that while Officer Houghton was a Park Police Officer and while it was a Park Police instituted pursuit, Officer Houghton was never actually involved in the pursuit. Throughout his deposition he clearly states that he was attempting to get to the area of the pursuit. It was not until Officer Houghton was approximately 2 blocks from the suspect Jeep when he first caught a glimpse of the actual vehicle. It is good to note that the first

time Officer Houghton sees the Jeep in question it is stopped, not moving and no longer being pursued.

Officer Houghton admits that he was 10-30 seconds away from the intersection of the crash when he heard the call "shots fired" and was in full view of the suspect Jeep when the call came across the radio stating that shots had been fired. Officer Houghton having full view of the scene could and should have easily stopped at the stop sign at the intersection of Clay and 61st streets but he blew past the stop sign traveling in excess of the speed limit, which he himself admits.

The District of Columbia General Orders pertaining to vehicular pursuits states on page 4 that "Members shall comply with the following traffic regulations when engaged in a vehicular pursuit: …(2) When approaching an intersection controlled by a stop sign, the operator of the vehicle shall stop before entering the intersection…."

Defendant U.S.A. breached the applicable standard of care owed to the Plaintiff's when he with full knowledge that the pursuit had come to a stop still went though a four-way stop sign controlled intersection with nothing more than a brief tap on his brakes. Officer Houghton failed to slow down and stop long enough to see the brand new marked MPD vehicle coming from his left. Officer Houghton has admitted that he slowed down long enough to make sure that the Plaintiff's vehicle was not in his way but could not bother to stop and give himself enough time to turn his head and clearly view any vehicles which may have been coming down Clay street from Officer Houghton's left.

As Officer Houghton blew through the intersection without due regard for the Plaintiffs' safety he was a proximate cause of the injuries the Plaintiffs' suffered.

In <u>District of Columbia v. Hawkins</u>, 782 A.2d 293 (2001) the Court held that the primary

focus must be not upon the conduct in all its aspects, but rather upon that particular conduct that might be said temporally and spatially to have proximately caused the collision. (Internal citations and quotation omitted)  When viewed in Plaintiff's favor the Park Police cruiser speeding through the stop sign and into the intersection with no lights or sirens on and collided with the MPD cruiser and ultimately the Plaintiff's vehicle, a chain of events, which led to the total destruction of three vehicles.

  Even if Officer Houghton believed that there was some reason to respond to the call of shots fired, there is simply no justification for him to have blown through the intersection without stopping.  Officer Houghton's actions in failing to stop at the stop sign exhibited an intentional and reckless disregard for the safety of citizens of the District of Columbia, namely Plaintiffs' Gibson and Hawkins.  The Plaintiffs' vehicle was clearly stopped before the intersection where the crash occurred and was clearly visible to any oncoming traffic, Officer Houghton has himself admitted that he saw the Plaintiff's vehicle and should therefore have proceeded with even more caution in order to protect innocent citizens.  This intersection was controlled by a four way series of stop signs.  Officer Houghton proceeded through the stop sign without looking for traffic coming from his left and clearly without stopping.  It should be noted that Officer Houghton did not in point of fact hear the actual shots that were fired, he only heard it come over the Park Police radio.  Therefore, Officer Houghton was driving at excessive speeds, blowing through stop signs when he could clearly see the suspect Jeep stopped two blocks ahead of his cruiser.

  It was foreseeable that this type of collision could happen and Officer Houghton knew or should have known of the high probability of a collision occurring at such an intersection when police vehicles are driven at a high speed and without adhering to General Orders or the D.C.

Municipal Regulations. Officer Houghton testified that he had passed at least one other MPD cruiser who had struck a telephone pole at an intersection while against all orders to not engage and to simply monitor the chase, engaged in the pursuit.[1]

**WHEREFORE**, Plaintiffs Gibson and Hawkins, for the foregoing reasons, respectfully requests that this Honorable Court deny Defendant United State's of America's Motion for Summary Judgment and for such other and further relief as this court deems just, necessary and appropriate.

Respectfully submitted,

By:   *Joel DuBoff*
Joel DuBoff
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131   Office
(301) 587-1872   Facsimile

---

[1] Note you can view the second damaged MPD cruiser in Exhibit 9F as the cruiser is sitting on top of a flat bed tow truck in the background of the aftermath of the instant collision.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
Civil Division

| | | |
|---|---|---|
| **ROLAN GIBSON, et al.** | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Case No. 1:06CV00551 |
| **UNITED STATES OF AMERICA** | * | Magistrate Judge: John M. Facciola |
| | * | |
| and | * | |
| | * | |
| **DISTRICT OF COLUMBIA** | * | |
| **GOVERNMENT** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Roland Gibson and John Hawkins by and through Joel DuBoff, Esquire and DUBOFF & ASSOCIATES, CHARTERED pursuant to all applicable rules of this Court, respectfully submits to this Honorable Court, the following Statement of Material Facts in Dispute:

1.      This is a case involving a collision between a District of Columbia (hereafter "DC") Metropolitan Police Department (hereafter "MPD") vehicle driven by Officer Marvin Watkins (hereafter "Watkins") and passenger Officer Gary Gulich (hereafter "Gulich"), a United States Park Police (hereafter "Park Police") vehicle operated by Officer Donald Houghton (hereafter "Houghton") which culminated in both police vehicles slamming into a stopped and parked civilian vehicle being operated by Plaintiff Rolan Gibson (hereafter "Gibson") along with his passenger Plaintiff John Hawkins (hereafter "Hawkins"). (Complaint ¶ 23)

2.   The collision that began the above captioned claim, occurred on December 8, 2004 at approximately 3:30 in the afternoon at the intersection of Clay Street and 61st Street, North East in the District of Columbia. (Exhibit 1)

3.   At the time of this major collision, the Park Police vehicle driven by Houghton was traveling westbound on Clay Street while the MPD vehicle driven by Watkins was traveling northbound on 61st Street and the Plaintiffs' vehicle was facing southbound on 61st Street and was stopped. (Exhibit 2 Page 20; Exhibit 1)

4.   Both police vehicles were approaching the four-way stop sign at the intersection of 61st and Clay Street and the Plaintiffs' vehicle was stopped and/or parked just prior to the intersection. (Exhibits 1 & 4)

5.   While other MPD vehicles may have been assisting the Park Police during the pursuit of the suspect Jeep, Officers Gulich and Watkins had dropped out of any pursuit and had allegedly stopped their cruiser immediately prior to the crash for approximately two minutes (Exhibit 5 Page 89 Lines 19-20)

6.   Officer Watkins and Gulich had turned off all sirens and lights so as to conceal themselves in case the suspects had bailed out of the Jeep and started heading towards the MPD cruiser then Officer Watkins and Gulich could apprehend the suspects. (Exhibit 5 Page 45 Lines 1-13)

7.   Officer Gulich admits that the cruiser was stopped with no lights and sirens and that he and Officer Watkins were not actively participating in anything involving the Park Police pursuit and were in actuality just waiting to assist if they were needed at the conclusion of the pursuit. (Exhibit 5 Page 45 Lines 1-13)

8. Officers Watkins and Gulich did not personally hear the shots that were fired they only heard through the radio that shots had been fired. (Exhibits 5 & 6)

9. Officer Houghton did not personally hear the shots that were fired he only heard through the radio that shots had been fired (Exhibit 2)

10. Houghton claims that his Park Police cruiser was traveling between 30 and 50 miles per hour before he came to the intersection in question while Officer Watkins claims that Officer Houghton was traveling at a high rate of speed. (Exhibit 2 Page 22 Lines 16-20; Exhibit 6 Page 148 Lines 9-10)

11. The MPD cruiser, per Gulich, was going no faster than 10 miles per hour while Houghton believes that the MPD vehicle was traveling about forty-five miles per hour. (Exhibit 5 Page 47 Line 22 to Page 48 Line 2 and Exhibit 2 Page 34 Line 21 to Page 35 Line 2)

12. The Park Police vehicle was traveling between 60 and 75 miles per hour and that the MPD vehicle was traveling about the same speed. (Exhibit 7 Page 103 line 22 to Page 104 line 4 and 14-19)

13. The Plaintiffs' vehicle was stopped on 61st Street "when a lot of police vehicles was chasing a Jeep so we stop and did not move. Next thing I no we was hit." (Exhibit 4 (Spelling and grammatical errors in original))

14. The two police cruisers involved in the subject collision did not have on any lights or sirens as they approached and entered the intersection. (Exhibit 7 Page 30 Lines 2-11)

15. Officer Watkins did not hear any sirens from Officer Houghton's vehicle prior to the collision. (Exhibit 6 Page 94 lines 2-7).

16. The three officers involved in the above captioned claim have each stated that their lights and sirens were activated. (Exhibit 5 Page 47 Lines 10-11; Exhibit 6 Page 80 Lines 9-11; Exhibit 2 Page 30 Lines 9-11)

17. Officer Gulich claims that he never saw the Park Police car until his vehicle was spinning around, despite the fact that he claims to have looked to his right before entering the intersection. (Exhibit 5 Page 52 Lines 5-8)

18. Houghton allegedly braked 20 yards before the intersection slowing to 30 miles per hour, he claims that he looked to his left and right to make sure the intersection was clear. (Exhibit 2 Page 21)

19. Houghton testified that he saw nothing to his left, the direction the MPD cruiser was approaching from. (Exhibit 2 Page 21)

20. Gulich has testified that he does not recall if the MPD cruiser stopped or just rolled thru the intersection while Watkins claims that he came to a complete stop. (Exhibit 6 Page 51 Lines 13-15 and Exhibit 5 Page 48 Lines 11-14)

21. Officer Houghton has stated that he did not observe the MPD cruiser slowing down for the stop sign before it entered the intersection. (Exhibit 2 Page 35 lines 6-14)

22. The Police cruisers struck each other in the intersection. (Exhibit 2 Page 64 lines 6-11 and Exhibit 6 Page 94 lines 17-25)

23. The MPD cruiser and the Park Police cruiser collided forcing the Park Police cruiser into the Plaintiffs' vehicle and then off the road and into a nearby yard. (Exhibit 2 Page 21 Lines 1-9; Exhibit 5 Page 52 lines 7-11 & 23-25; Exhibit 8 Page 23 Lines 3-12 and Exhibit 9A-F)

24. Due to the collision with the Park Police cruise the MPD cruiser was spun around so that the back of the MPD car hit the driver's side of the Plaintiffs' vehicle bashing the Plaintiffs' into a telephone pole. (Exhibit 2 Page 21 Lines 1-9; Exhibit 5 Page 52 lines 7-11 & 23-25; Exhibit 8 Page 23 Lines 3-12 and Exhibit 9A-F)

25. The Defendant District of Columbia's police vehicle was not operating on an emergency run as set forth in DC Code 2-411(4).

26. The Defendant U.S.A.'s police vehicle was not operating on an emergency run as set forth in DC Code 2-411(4).

27. The operator of the Defendant District of Columbia's police vehicle failed to apply his brakes in order to avoid colliding with the Defendant U. S A's vehicle.

28. The operator of the Park Police vehicle failed to apply his brakes in order to avoid colliding with the Defendant District of Columbia's MPD cruiser.

29. The Plaintiffs' injuries were a direct result of the negligence/gross negligence on the part of the driver of the Defendant District of Columbia's police vehicle.

30. The Plaintiffs' injuries were a direct result of the negligence/gross negligence on the part of the driver of the Park Police vehicle.

31. The operator of the Defendant District of Columbia's police vehicle was in direct violation of the District of Columbia Municipal Regulations.

32. Multiple police vehicles were involved and present in the pursuit. (Exhibit 4)

33. Plaintiffs' have alleged in the Complaint that the MPD Officers involved in the crash were grossly negligent in the performance of their duties. (Complaint)

34. Officer Houghton was 10 to 30 seconds from the intersection of the crash when he heard the radio call for "shots fired" (Exhibit 2 Page 60 lines 6-14)

35. Officer Houghton was 2 blocks from the location of the crash when the call "shots fired" came over the radio. (Exhibit 2 Page 60 lines 15-17)

Respectfully submitted,

By:    *Joel DuBoff*
Joel DuBoff
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile