**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **ROLAN GIBSON, et al.** | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | |
| | * | **Case No. 1:06CV00551** |
| **UNITED STATES OF AMERICA** | * | **Magistrate Judge: John M. Facciola** |
| | * | |
| **and** | * | |
| | * | |
| **DISTRICT OF COLUMBIA** | * | |
| **GOVERNMENT** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

COMES NOW the Plaintiffs Roland Gibson and John Hawkins by and through Joel DuBoff, Esquire and DUBOFF & ASSOCIATES, CHARTERED pursuant to all applicable rules of this Court, respectfully submits to this Honorable Court, an Opposition to Defendant District of Columbia's Motion for Judgment on the Pleadings or for Summary Judgment and for cause further states as follows:

1.      Defendant District of Columbia has failed to establish that it is entitled to summary judgment.

2.      Defendant District of Columbia has failed to establish that it is entitled to judgment on the pleadings.

3.      There exists genuine issues of fact material to this case and the Defendants are not entitled to judgment as a matter of law.

4.      Plaintiffs' are not required to show that the Defendant District of Columbia police vehicle at issue in the above captioned case was operating in a grossly negligent manner as the

vehicle was not being operated as an Emergency Vehicle as defined by D.C. Code§ 2-411(4).

5.      There exists evidence from which a reasonable jury could conclude that Defendant District of Columbia MPD Officers acted with gross negligence

6.      Plaintiffs' incorporate by reference thereto as if fully set forth herein any fact, argument, and/or law contained within the Plaintiff's Opposition to Defendant United States of America's Motion for Summary Judgment.

7.      Plaintiffs' position in opposition is more fully set forth in the accompanying Memorandum of Points and Authorities incorporated herein by reference thereto.

8.      Plaintiffs' Statement of Material Facts in Dispute and a Proposed Order are attached hereto.

WHEREFORE, Plaintiffs Gibson and Hawkins, for the foregoing reasons, respectfully request that this Honorable Court deny Defendant District of Columbia's Motion for Judgment on the Pleadings or for Summary Judgment and for such other and further relief as this Honorable Court deems just, necessary and appropriate.

Respectfully submitted,

By:      *Joel DuBoff*

Joel DuBoff
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of June, 2007 a copy of the foregoing Opposition to Defendant District of Columbia's Motion for Judgment on the Pleadings or for Summary Judgment, Memorandum of Points and Authorities regarding the same and a Proposed Order were served via this Court's Electronic Case Filing System to:


Michelle N. Johnson, Esquire
Assistant United States Attorney
555 4th Street, N.W., Room E4212
Washington, D.C. 20530

James Vricos, Esquire
Assistant Attorney General
Civil Litigation Division
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001


_____*Joel DuBoff*_____
Joel DuBoff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

ROLAN GIBSON, et al.                    *
                Plaintiffs,    *
                            *
    v.    *
                            *    **Case No. 1:06CV00551**
UNITED STATES OF AMERICA    *    **Magistrate Judge: John M. Facciola**
                            *
    and    *
                            *
DISTRICT OF COLUMBIA    *
  GOVERNMENT    *
                Defendants.    *
* * * * * * * * * * * * * * * * * * * * * * *

## EXHIBIT LIST

1.     Police Report of the Metropolitan Police Department

2.     Deposition of Officer Houghton

3.     Deposition of Sgt. Wade

4.     Complainant/Witness Statement of Plaintiff Hawkins

5.     Deposition of Officer Gulich

6.     Deposition of Officer Watkins

7.     Deposition of Plaintiff Gibson

8.     Deposition of Plaintiff Hawkins

9A.     Photograph

9B.     Photograph

9C.     Photograph

9D.     Photograph

9E.     Photograph

9F.     Photograph

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **ROLAN GIBSON, et al.** | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | |
| | * | **Case No. 1:06CV00551** |
| **UNITED STATES OF AMERICA** | * | **Magistrate Judge: John M. Facciola** |
| | * | |
| **and** | * | |
| | * | |
| **DISTRICT OF COLUMBIA** | * | |
| **GOVERNMENT** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

COMES NOW the Plaintiffs Roland Gibson and John Hawkins by and through Joel DuBoff, Esquire and DUBOFF & ASSOCIATES, CHARTERED and pursuant to all applicable rules of this Court, respectfully submits to this Honorable Court, the following Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Defendant District of Columbia's Motion for Judgment on the Pleadings or for Summary Judgment and for cause further states as follows:

### STANDARD OF REVIEW

"The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." *Wallace,* 1998 D.C. App. LEXIS 9, at *9; *McBryde v. Amoco Oil Co.,* 4040 A.2d 200, 203 (D.C. 1979).   In addition, all ambiguities must be resolved in plaintiff's favor.  *See Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards,* 680 A.2d 419, 430 (D.C. 1996).  Given these

considerations, "unless it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," a pleading should not be dismissed. *Id*.

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d. 202, 106 S. Ct. 2505 (1986). In deciding a motion for summary judgment the District Court is obligated to view the available evidence in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Popham, Haik, Schnobrich, Kaufman & Dotty, Ltd. V. Newcomb Securities Co.*, 243 U.S. App. D.C. 43, 751 F.2d 1262, 1263 (D.C. Cir. 1985) ("any doubt is to be resolved against the moving party"). In *Anderson*, the Supreme Court made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

The moving party bears the burden of demonstrating the absence of any genuine issue of material facts. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Richardson v National Rifle Association,* 871 F. Supp. 499 (D.D.C. 1994). The defendant is thus entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

The Court's threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury <u>might</u> return a verdict in his favor. If he does so, there is a genuine issue of fact that requires trial." See

6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added).

## FACTS

This is a case involving a collision between a District of Columbia (hereafter "DC")

Metropolitan Police Department (hereafter "MPD") vehicle driven by Officer Marvin Watkins

(hereafter "Watkins") and passenger Officer Gary Gulich (hereafter "Gulich"), a United States

Park Police (hereafter "Park Police") vehicle operated by Officer Donald Houghton (hereafter

"Houghton") which culminated in both police vehicles separately slamming into a civilian

vehicle being operated by Plaintiff Rolan Gibson (hereafter "Gibson") along with his passenger

Plaintiff John Hawkins (hereafter "Hawkins"). (Complaint ¶ 23)  Plaintiffs' were forced to

endure three collisions in rapid succession. One from the Park Police Cruiser, one from the MPD

cruiser and a final one from being slammed into a telephone pole. (Exhibit 6 & 7)

The collision that began the above captioned claim, occurred on December 8, 2004 post

3:30 in the afternoon at the intersection of Clay Street and 61st Street, North East in the District

of Columbia.  (Exhibit 1 - Police Report of the MPD) It is undisputed by the parties that the

weather conditions on the date in question were clear and the roads were dry. (Exhibit 1)  It is

also undisputed that the Plaintiffs' did nothing wrong. (Exhibits 2, 5, & 6)

Upon information and belief the Park Police were involved in a vehicular chase involving

a black jeep, which began in the State of Maryland and crossed into the District of Columbia.

(Exhibit 2 - Deposition of Houghton Pages 12-13)  As the chase crossed into the District of

Columbia the MPD officers were advised by Sgt Felicia Wade that they could monitor the

situation but not to participate in the chase. (Exhibit 3 - Deposition of Wade Page 44; Exhibit 6 -

Watkins Depo Page 98).

At the time of this major collision, the Park Police vehicle driven by Houghton was

traveling westbound on Clay street while the MPD vehicle driven by Watkins was traveling northbound on 61st street and the Plaintiffs' vehicle was facing southbound on 61st street and was stopped.  (Exhibit 2 Page 20; Exhibit 1) Both police vehicles were approaching the four-way stop sign at the intersection of 61st and Clay Street at right angles, and the Plaintiffs' vehicle was stopped just prior to the intersection in the opposite direction of the MPD cruiser. (Exhibit 1 & Exhibit 4 - Complainant/Witness Statement of Plaintiff Hawkins)  The speed limit at the location of the collision was 25 miles per hour.  (Exhibit 1)

Contemporaneously with the pursuit Officers Watkins and Gulich were advised by Sgt. Wade, their supervisor that their relief was up and to report back to the station.  Officer Watkins and Gulich stated that they needed more time and advised that they were not returning to the station and in fact Officers Gulich and Watkins had joined in the pursuit prior to making the determination to drop out and sit and wait. (Exhibit 5) Said pursuit was illegal and countermanded by a superior officer who advised MPD units at least three times to not join in the pursuit and to only monitor the situation. (Exhibit 3 page 44 lines 15-16 and 18-20)

While other MPD vehicles may have been assisting the Park Police during the pursuit of the suspect Jeep, Officers Gulich and Watkins had dropped out of any pursuit and had allegedly stopped their cruiser immediately prior to the crash for approximately two minutes (Exhibit 5 - Gulich Deposition Page 89 Lines 19-20) and had turned off all sirens and lights so as to conceal themselves in case the suspects had bailed out of the Jeep and started heading towards the MPD cruiser then Officer Watkins and Gulich could apprehend the suspects. (Exhibit 5 Page 45 Lines 1-13)  Officer Gulich clearly admits that the cruiser was stopped with no lights and sirens and that he and Officer Watkins were not actively participating in anything involving the Park Police pursuit and were in actuality just waiting to assist if they were needed at the pursuits conclusion.

8

It is seriously disputed that Officers Watkins and Gulich did not know where they were going. There is no testimony that a location was given of where the shots had been fired nor were any other details given regarding the situation such as who had fired or what the target was. Based on the testimony at hand, Officers Gulich and Watkins simply state that all they heard on the radio was "shots fired" and then allegedly took off, going 7 to 10 miles per hour, with no apparent destination when in fact they did not know where they were going and they were in absolutely no hurry to get wherever they believed that they were going. Further there is no record of Officer Watkins or Officer Gulich radioing in to dispatch or their Sergeant for permission to go code 1 and respond to the shots fired call.

There is a major dispute as to the speed of the police vehicles involved in the collision. Houghton claims that his Park Police cruiser was traveling between 30 and 50 miles per hour before he came to the intersection in question while Officer Watkins claims that Officer Houghton was traveling at a high rate of speed. (Exhibit 2 Page 22 Lines 16-20; Exhibit 6 - Watkins Depo Page 148 Lines 9-10) The MPD cruiser, per Gulich, was going no faster than 10 miles per hour while Houghton believes that the MPD vehicle was traveling about forty-five miles per hour. (Exhibit 5 Page 47 Line 22 to Page 48 Line 2; Exhibit 2 Page 34 Line 21 to Page 35 Line 2) Plaintiff Gibson has testified that the Park Police vehicle was traveling between 60 and 75 miles per hour and that the MPD vehicle was traveling about the same speed. (Exhibit 7 - Gibson Depo Page 103 line 22 to Page 104 line 4 and 14-19)

The Plaintiffs' vehicle was stopped on 61st street "when a lot of police vehicles was chasing a Jeep so we stop and did not move. Next thing I no we was hit." (Exhibit 4 (Spelling and grammatical errors in original))

Plaintiff Gibson has testified that that the two police cruisers involved in the subject

9

collision did not have on any lights or sirens as they approached and entered the intersection. (Exhibit 7 Page 30 Lines 2-11)  Officer Watkins has also testified that he did not hear any sirens from Officer Houghton's vehicle prior to the collision. (Exhibit 6 Page 94 lines 2-7).  The three officers involved in the above captioned claim have each stated that their lights and sirens were activated.  (Exhibit 5 Page 47 Lines 10-11; Exhibit 6 Page 80 Lines 9-11; Exhibit 2 Page 30 Lines 9-11) Officer Gulich claims that he never even saw the Park Police car until his vehicle was spinning around despite the fact that he claims to have looked to his right before entering the intersection. (Exhibit 5 Page 52 Lines 5-8)

Houghton allegedly braked 20 yards before the intersection slowing to 30 miles per hour, he claims that he looked to his left and right to make sure the intersection was clear. (Exhibit 2 Page 21) Houghton testified that he saw nothing to his left, the direction the MPD cruiser was approaching from. (Exhibit 2 Page 21)

Gulich has testified that "we accelerated to get up to the intersection, slowed down for the intersection, and entered the intersection" while Officer Watkins, a rookie only out of the academy 2 months, claims that he came to a complete stop. (Exhibit 6 Page 51 Lines 13-15 and Exhibit 5 Page 104 Lines 15-17)  Officer Houghton has testified that he saw the MPD cruiser before it entered the intersection when it was still behind the stop sign on 61st street. (Exhibit 2 Page 25 Line 10 to Page 26 Line 8) Further, Officer Houghton has stated that he did not observe the MPD cruiser slowing down for the stop sign before it entered the intersection. (Exhibit 2 Page 35 lines 6-14)

Houghton testified during deposition that the MPD cruiser T-boned his vehicle and Officer Watkins has clearly stated that his cruiser went into the Park Police cruiser. (Exhibit 2 Page 64 lines 6-11 and Exhibit 6 Page 94 lines 17-25)  The MPD cruiser hit the Park Police

10

cruisers drivers door forcing the Park Police cruiser into the Plaintiffs' vehicle and then continued off the road, jumping the curb, up some steps to the front of a residential house and into a nearby yard. (Exhibit 1) When the MPD cruiser hit the Park Police cruiser it went into a 180 degree spin and the back of the MPD car hit the drivers side of the Plaintiffs' vehicle bashing the Plaintiffs' into a telephone pole at the corner of 61st and Clay streets (Exhibit 2 Page 21 Lines 1-9; Exhibit 5 Page 52 lines 7-11 & 23-25; Exhibit 8 - Hawkins Depo Page 23 Lines 3-12 and Exhibit 9A-F - Photos)

Prior to Officer Watkins and Gulich becoming involved in the subject collision they were informed that their relief was up and to return to the station. (Exhibit 3 Page 39 Line 23 to Page 40 line 1)  When Sgt. Wade arrived at the scene of the collision she has testified that the MPD vehicle did not have any lights or sirens activated. (Exhibit 3 Page 84 lines 5-8)

## ARGUMENT

### I.    PLAINTIFFS' HAVE ALLEGED GROSS NEGLIGENCE AGAINST THE DISTRICT OF COLUMBIA

Plaintiffs have sought leave to file their Amended Complaint to more clearly identify the fact that Plaintiffs' believe that Defendant District of Columbia and Defendant United States of America were grossly negligent in their actions in this case. Prior to the filing of this Opposition the Court granted Plaintiffs' leave to file their Amended Complaint.  Therefore the original arguments contained within this section are unnecessary as the filing of Plaintiffs' Amended Complaint, which clearly alleges gross negligence against the Defendant's, negates this issue.

### II.    THE DISTRICT OF COLUMBIA CRUISER WAS NOT ON AN EMERGENCY RUN AS DEFINED BY D.C. CODE§ 2-411(4).

An "authorized emergency vehicle." under DCMR §2210.1 is defined as a vehicle using visible lights and an audible signal.

When the facts are viewed in a light most favorable to the non-movant, the Plaintiffs', it is clear that this Defendant's cruiser was not operating the emergency lights atop the vehicle or its siren or any other audible device at the time of the accident in question as required by 18 D.C.M.R §2210.1. Therefore the defendant was in direct violation of the DC Municipal Regulations.

Based on the police report and the depositions of parties in this matter, it is a clear material fact in dispute as to whether or not the MPD vehicle involved in the collision was operating their lights and sirens at the time of the crash, whether or not the MPD cruiser was legally operating as an authorized emergency vehicle, and whether or not the MPD cruiser was on an emergency run.

D.C. Code §2-411(4) (2001) clearly states:

> "Emergency run" means the movement of a District-owned vehicle, by direction of the operator or of some other authorized person or agency, under circumstances which lead the operator or such persons or agency to believe that such vehicle should proceed expeditiously upon a particular mission or to a designated location for the purpose of dealing with a supposed fire or other emergency, an alleged violation of a statute or regulation, or other incident requiring emergency action, or the prompt transportation to a place of treatment or greater safety of an alleged sick or injured person.

While the Defendant DC would like to have this Court believe that "it is beyond dispute" that Officers Watkins and Gulich were in an emergency vehicle on an emergency run the Plaintiffs' clearly and unequivocally state the exact opposite that Officers Gulich and Watkins were not operating an emergency vehicle on an emergency run at the time of the collision.

An "authorized emergency vehicle." under DCMR §2210.1 is defined as a vehicle using visible lights and an audible signal.  The defendant has avoiding citing D.C.M.R. 2002.3, which states quite clearly "The exemption granted in this section to an authorized emergency vehicle

**shall only apply when the driver of the vehicle while in motion sounds an audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped as specified in §712 of this title."** (Emphasis added)

Defendant DC attempts to misdirect or distract the Court in their recitation of the facts, while other MPD vehicles may have been assisting the Park Police during the pursuit of the suspect Jeep, Officers Gulich and Watkins had dropped out of any pursuit and had allegedly stopped their cruiser immediately prior to the crash for approximately two minutes (Exhibit 5 Page 89 Lines 19-20) and had turned off all sirens and lights so as to conceal themselves in case the suspects had bailed out of the Jeep and started heading towards the MPD cruiser then Officer Watkins and Gulich could apprehend the suspects. (Exhibit 5 Page 45 Lines 1-13)  Officer Gulich clearly admits that the cruiser was stopped with no lights and sirens and that he and Officer Watkins were not actively participating in anything involving the Park Police pursuit and were in actuality just waiting to assist if they were needed at the conclusion of the pursuit.

Officers Gulich and Watkins had joined in the pursuit prior to making the determination to drop out and sit and wait.  Said pursuit was illegal and countermanded by a superior officer who advised MPD units at least three times to not join in the pursuit and to only monitor. (Exhibit 3)

D.C. Code §2-411(4) (2001) clearly states in part that in order to qualify as an emergency run the operator of the vehicle should "…proceed expeditiously upon a particular mission or to a designated location…".

Dictionary.com defines expeditiously as "characterized by promptness" and "acting or done with speed and efficiency."[1]  Officer Watkins clearly stated in his deposition testimony that

---

[1] *Dictionary.com Unabridged (v 1.1)*. website: http://dictionary.reference.com/browse/expeditiously

he was driving 7 to 10 miles per hour when he entered the intersection and Officer Gulich states that in fact it had taken the MPD cruiser 20 to 30 seconds to travel the half block from where they had parked the cruiser to the intersection of Clay and 61st streets.  Based solely on their own testimony, it is by no stretch of the imagination that Officers Gulich and Watkins can successfully claim that they were proceeding expeditiously to assist with a call regarding "shots fired".

It is undisputed that the words "shots fired" were broadcast across the police channel and that Officers Gulich and Watkins were responding to that broadcast.  What is in serious dispute is the fact that Officers Watkins and Gulich did not know where they were going.  There is no testimony that a location was given of where the shots had been fired nor were any other details given regarding the situation such as who had fired or what the target was.  Based on the testimony at hand, Officers Gulich and Watkins simply state that all they heard on the radio was "shots fired" and then allegedly took off, going 7 to 10 miles per hour, with no apparent destination therefore Officers Watkins and Gulich can not now state that they were proceeding to a designated location.  In fact they did not know where they were going and they were in absolutely no hurry to get wherever they believed that they were going.

In District of Columbia v. Hawkins, 782 A.2d 293 (2001) the Court held that the primary focus must be not upon the conduct in all its aspects, but rather upon that particular conduct that might be said temporally and spatially to have proximately caused the collision. (Internal citations and quotation omitted)  When viewed in Plaintiff's favor the MPD cruiser while allegedly going 7-10 miles per hour drove through a stop sign with no lights or sirens on and collided with the driver's door of the Park Police cruiser setting off a chain of events which led to the total destruction of three vehicles.

14

III.    **THERE EXISTS EVIDENCE FROM WHICH A REASONABLE JURY COULD CONCLUDE THAT DEFENDANT DISTRICT OF COLUMBIA MPD OFFICERS ACTED WITH GROSS NEGLIGENCE**

Although the District of Columbia MPD Officers' conduct in this case is to be evaluated under the standard for negligence, and not gross negligence, because, as stated above, the MPD Officers were not operating an emergency vehicle on an emergency run in that there were no lights or sirens in use, and the standard cited by defendants in *Duggan v. District of Columbia*, 884 A.2d 661 (D.C. 2005), is not satisfied because the officers "were not proceed[ing] expeditiously upon a particular mission or to a designated location", there exists evidence of gross negligence.

Specifically, there is evidence that the MPD officers were allegedly stopped on Clay Street after having been ordered more than once by their field supervisor, Sgt. Wade, not to join the pursuit which already involved multiple police vehicles as stated in Exhibit 4, on a chase that originated in Laurel, Maryland.

The MPD officers testified that they were on 61st street in their patrol vehicle monitoring the radio when they heard a call for "shots fired" come across the radio. At this point the MPD officers offer diametrically opposing and conflicting accounts of what occurred. Officer Watkins testified that the patrol car was put into action and moving approximately 7-10 miles per hour, approached the intersection where the incident occurred, and came to a complete stop, looked to the right, the direction the Park Police officer approached, and after seeing nothing, proceeded into the intersection where the crash occurred, despite his own deposition testimony that "you can see a pretty good ways down Clay" (Exhibit 6 at page 139 Lines 18-22). However, Officer Gulich testified that after hearing "shots fired", the MPD officer operating the vehicle "accelerated to get up to the intersection, slowed down for the intersection, and entered the

15

intersection." (Exhibit 5 Page 104 lines 15-17) This testimony establishes that the MPD officers did not stop at the stop sign but rather went through the stop sign and therefore, the MPD officer operating the vehicle did not look to see if it was clear to enter the intersection. Had Officer Watkins looked to his right, he would have clearly seen the vehicle operated by the Park Police fast approaching in pursuit of the suspect Jeep as he stated in his deposition that you can see a pretty good ways down Clay street and there are no obstructions to the view, therefore if he had looked he would have seen the Park Police cruiser approaching and entering the intersection.

Officer Gulich's testimony is wholly consistent with the actual damage that occurred in the crash. (Exhibit 9A-F). The damage to all three vehicles, including plaintiff's vehicle, reveals a crash into the driver's side door of the Park Police officer's vehicle. Not only does officer Gulich's testimony contradict Officer Watkins' testimony, the impact and damage to the MPD cruiser and the Park Police cruiser clearly contradicts Officer Watkins' testimony. The damage revealed in Exhibits 9A-F could not have occurred if we were to believe that Officer Watkins entered the intersection at only 7-10 miles an hour as alleged.

To prove gross negligence, plaintiff has to prove "deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others"

Even if the MPD officers believed that there was some reason to respond to the call of shots fired, there is simply no justification for the MPD officers to accelerate and enter the intersection without slowing down or stopping. The MPD officers' actions of accelerating and failing to stop at the stop sign exhibited an intentional and reckless disregard for the safety of citizens of the District of Columbia, namely Plaintiffs' Gibson and Hawkins. The Plaintiffs' vehicle was clearly stopped before the intersection where the crash occurred and was clearly

visible to any oncoming traffic had they indeed looked for approaching vehicles. This intersection was controlled by a four way series of stop signs. The MPD officers proceeded through the stop sign without looking for oncoming traffic and clearly without stopping. It should be noted that the MPD officers did not themselves hear the actual shots fired, they only heard it come over the police radio. Therefore, the MPD officers were driving at excessive speeds, blowing through stop signs, but they had no specific mission or destination and there is no evidence that the MPD officers advised that were in any way responding to the shots fired.

It was foreseeable that this type of collision could happen and Officers Gulich and Watkins knew of the high probability of a collision occurring at such an intersection when police vehicles are driven at a high speed and without adhering to MPD General Orders or the D.C. Municipal Regulations. The MPD cruiser had passed at least one other MPD cruiser who had struck a telephone pole at an intersection while also against all orders to not engage and to simply monitor the chase, engaged in the pursuit.[2]

18 D.C.M.R. § 2002.1 states that an "authorized emergency vehicle may exercise the privileges set forth in this section, subject to the conditions contained in this section, in the following circumstances: (a) When responding to an emergency call; (b) When in pursuit of an actual or suspected violator of the law…"

According to the 18 D.C.M.R. § 2002.2(b) an authorized emergency vehicle may proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation. 18 D.C.M.R. §2002.3 states quite clearly "The exemption granted in this section to an authorized emergency vehicle **shall only apply when the driver of the vehicle while in motion**

---

[2] Note you can view the second damaged MPD cruiser in Exhibit 9F as the cruiser is sitting on top of a flat bed tow truck in the background of the aftermath of the instant collision.

**sounds an audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped as specified in §712 of this title."** (Emphasis added)

18 D.C.M.R. § 2002.4 states "The provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall these provisions protect the driver from the consequences of his reckless disregard for the safety of others."

Based on officer Watkins' testimony, his decision to enter the intersection when he did, is further evidence of gross negligence since he would have had to have seen the Park Police cruiser fast approaching if he looked to the right as alleged in his deposition.  Therefore, even though the standard in this case is not gross negligence, there exists evidence from which a reasonable jury could conclude that defendant District of Columbia MPD officers were grossly negligent.

The defendant quotes <u>District of Columbia v. Walker</u>, 689 A.2d 40, 49n. 15 (D.C. 1984) in support of its argument that the plaintiff has not established "gross negligence".  Plaintiffs' would argue the fact that the Defendant DC's employees were operating the MPD cruiser in direct contravention of existing Departmental Standing Orders and in violation of the District of Columbia's Municipal Regulations is a clear demonstration of the "wanton, willful and reckless disregard" standard set forth in *Walker*.

## IV.    <u>CONCLUSION</u>

The issue as to whether this Defendant's Police vehicle was operating legally as an emergency vehicle, whether the MPD vehicle was on an emergency run, whether the MPD vehicle had the right to disregard the laws of the District of Columbia regarding obeying traffic

control signals and the respective speeds of the vehicles involved are all material facts in serious

doubt and dispute.

The defendant's blatant disregard of the D.C.M.R. in complete disregard of the safety of

others upon the roadway clearly demonstrates the factors supporting 'gross negligence", and the

facts in this case would clearly support an argument of negligence *per se* or "gross negligence"

should this court determine that to be the appropriate standard should this matter proceed to trial.

**WHEREFORE**, Plaintiffs Rolan Gibson and John Hawkins, for the foregoing reasons,
respectfully requests that this Honorable Court deny Defendant District of Columbia's Motion

for Judgment on the Pleadings or for Summary Judgment and for such other and further relief as

this court deems just, necessary and appropriate.

Respectfully submitted,

By:    *Joel DuBoff*

Joel DuBoff
DuBoff & Associates, Chartered
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **ROLAN GIBSON, et al.** * | |
| **Plaintiffs,** * | |
| * | |
| **v.** * | |
| * | **Case No. 1:06CV00551** |
| **UNITED STATES OF AMERICA** * | **Magistrate Judge: John M. Facciola** |
| * | |
| **and** * | |
| * | |
| **DISTRICT OF COLUMBIA** * | |
| **GOVERNMENT** * | |
| **Defendants.** * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE IN SUPPORT OF**
**THEIR OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**

Plaintiffs Roland Gibson and John Hawkins by and through Joel DuBoff, Esquire and

DuBoff & Associates, Chartered pursuant to all applicable rules of this Court, respectfully

submits to this Honorable Court, the following Statement of Material Facts in Dispute:

1.      This is a case involving a collision between a District of Columbia (hereafter

"DC") Metropolitan Police Department (hereafter "MPD") vehicle driven by Officer Marvin

Watkins (hereafter "Watkins") and passenger Officer Gary Gulich (hereafter "Gulich"), a United

States Park Police (hereafter "Park Police") vehicle operated by Officer Donald Houghton

(hereafter "Houghton") which culminated in both police vehicles slamming into a stopped and

parked civilian vehicle being operated by Plaintiff Rolan Gibson (hereafter "Gibson") along with

his passenger Plaintiff John Hawkins (hereafter "Hawkins"). (Complaint ¶ 23)

2.      The collision that began the above captioned claim, occurred on December 8,

2004 at approximately 3:30 in the afternoon at the intersection of Clay Street and 61st Street,

North East in the District of Columbia.  (Exhibit 1)

3.     At the time of this major collision, the Park Police vehicle driven by Houghton

was traveling westbound on Clay Street while the MPD vehicle driven by Watkins was traveling

northbound on 61st street and the Plaintiffs' vehicle was facing southbound on 61st street and was

stopped.  (Exhibit 2 Page 20; Exhibit 1)

4.     Both police vehicles were approaching the four-way stop sign at the intersection

of 61st and Clay Street and the Plaintiffs' vehicle was stopped and/or parked just prior to the

intersection. (Exhibits 1 & 4)

5.     While other MPD vehicles may have been assisting the Park Police during the

pursuit of the suspect Jeep, Officers Gulich and Watkins had dropped out of any pursuit and had

allegedly stopped their cruiser immediately prior to the crash for approximately two minutes

(Exhibit 5 Page 89 Lines 19-20)

6.     Officer Watkins and Gulich had turned off all sirens and lights so as to conceal

themselves in case the suspects had bailed out of the Jeep and started heading towards the MPD

cruiser then Officer Watkins and Gulich could apprehend the suspects. (Exhibit 5 Page 45 Lines

1-13)

7.     Officer Gulich admits that the cruiser was stopped with no lights and sirens and

that he and Officer Watkins were not actively participating in anything involving the Park Police

pursuit and were in actuality just waiting to assist if they were needed at the conclusion of the

pursuit. (Exhibit 5 Page 45 Lines 1-13)

8.     Officers Watkins and Gulich did not personally hear the shots that were fired they

only heard through the radio that shots had been fired.

9.      Houghton claims that his Park Police cruiser was traveling between 30 and 50 miles per hour before he came to the intersection in question while Officer Watkins claims that Officer Houghton was traveling at a high rate of speed.  (Exhibit 2 Page 22 Lines 16-20; Exhibit 6 Page 148 Lines 9-10)

10.     The MPD cruiser, per Gulich, was going no faster than 10 miles per hour while Houghton believes that the MPD vehicle was traveling about forty-five miles per hour. (Exhibit 5 Page 47 Line 22 to Page 48 Line 2 and Exhibit 2 Page 34 Line 21 to Page 35 Line 2)

11.     Plaintiff Gibson has testified that the Park Police vehicle was traveling between 60 and 75 miles per hour and that the MPD vehicle was traveling about the same speed.  (Exhibit 7 Page 103 line 22 to Page 104 line 4 and 14-19)

12.     The Plaintiffs' vehicle was stopped on 61st street "when a lot of police vehicles was chasing a Jeep so we stop and did not move.  Next thing I no we was hit." (Exhibit 4 (Spelling and grammatical errors in original))

13.     Plaintiff Gibson has testified that that the two police cruisers involved in the subject collision did not have on any lights or sirens as they approached and entered the intersection. (Exhibit 7 Page 30 Lines 2-11)

14.     Officer Watkins testified that he did not hear any sirens from Officer Houghton's vehicle prior to the collision. (Exhibit 6 Page 94 lines 2-7).

15.     The three officers involved in the above captioned claim have each stated that their lights and sirens were activated.  (Exhibit 5 Page 47 Lines 10-11; Exhibit 6 Page 80 Lines 9-11; Exhibit 2 Page 30 Lines 9-11)

16.     Officer Gulich claims that he never saw the Park Police car until his vehicle was spinning around despite the fact that he claims to have looked to his right before entering the

intersection. (Exhibit 5 Page 52 Lines 5-8)

17.     Houghton braked 20 yards before the intersection slowing to 30 miles per hour, he claims that he looked to his left and right to make sure the intersection was clear. (Exhibit 2 Page 21)

18.     Houghton testified that he saw nothing to his left, the direction the MPD cruiser was approaching from. (Exhibit 2 Page 21)

19.     Gulich has testified that he does not recall if the MPD cruiser stopped or just rolled thru the intersection while Watkins claims that he came to a complete stop. (Exhibit 6 Page 51 Lines 13-15 and Exhibit 5 Page 48 Lines 11-14)

20.     Officer Houghton has testified that he saw the MPD cruiser before it entered the intersection when it was still behind the stop sign on 61st street. (Exhibit 2 Page 25 Line 10 to Page 26 Line 8)

21.     Officer Houghton has stated that he did not observe the MPD cruiser slowing down for the stop sign before it entered the intersection. (Exhibit 2 Page 35 lines 6-14)

22.     Houghton testified during deposition that the MPD cruiser T-boned his vehicle and Officer Watkins has clearly stated that his cruiser went into the Park Police cruiser. (Exhibit 2 Page 64 lines 6-11 and Exhibit 6 Page 94 lines 17-25)

23.     The MPD cruiser hit the Park Police cruisers drivers door forcing the Park Police cruiser into the Plaintiffs' vehicle and then off the road and into a nearby yard.  (Exhibit 2 Page 21 Lines 1-9; Exhibit 5 Page 52 lines 7-11 & 23-25; Exhibit 8 Page 23 Lines 3-12 and Exhibit 9A-F)

24.     When the MPD cruiser hit the Park Police cruiser it went into a spin and the back of the MPD car hit the drivers side of the Plaintiffs' vehicle bashing the Plaintiffs' into a

telephone pole (Exhibit 2 Page 21 Lines 1-9; Exhibit 5 Page 52 lines 7-11 & 23-25; Exhibit 8

Page 23 Lines 3-12 and Exhibit 9A-F)

      25.     The Defendant District of Columbia's police vehicle was not operating on an

emergency run as set forth in DC Code 2-411(4).

      26.     The operator of the Defendant District of Columbia's police vehicle failed to

apply his brakes in order to avoid colliding with the Defendant United States of America's

vehicle.

      27.     The Plaintiffs' injuries were a direct result of the gross negligence on the part of

the driver of the Defendant District of Columbia's police vehicle.

      28.     The operator of the Defendant District of Columbia's police vehicle was in direct

violation of the District of Columbia Municipal Regulations.

      29.     Multiple police vehicles were already involved and present in the pursuit. (Exhibit

4)

      30.     Plaintiffs' have alleged in the Complaint that the MPD Officers involved in the

crash were grossly negligent in the performance of their duties. (Complaint)

                          Respectfully submitted,

               By:      _Joel DuBoff_____

                    Joel DuBoff
                    DUBOFF & ASSOCIATES, CHARTERED
                    8401 Colesville Road, Suite 501
                    Silver Spring, Maryland 20910
                    (301) 495-3131    Office
                    (301) 587-1872    Facsimile