IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROLAND GIBSON, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-0551 (JMF) |
| ) | |
| **THE UNITED STATES OF AMERICA,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT THE UNITED STATES' RESPONSE IN OPPOSITION TO THE DISTRICT OF COLUMBIA'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**

Defendant, the United States of America, hereby files its opposition to the motion of Defendant, the District of Columbia ("the District"), for judgment on the pleadings or for summary judgment.

Despite the overwhelming evidence that the Metropolitan Police Officers involved in this case were not on an emergency run when they violated the Metropolitan Police Department's ("MPD") General Orders and the commands of their supervising officer, sped through a residential neighborhood at a high rate of speed, and ignored traffic control signals, the District contends that judgment on the pleadings or alternatively, summary judgment, is warranted in its favor because Plaintiffs failed to allege that the District acted in a grossly negligent manner as required by the District of Columbia Employee Non-Liability Act, D.C. Code § 2-412. Furthermore, the District contends, summary judgment is proper because there is no evidence to support a finding of gross negligence in this case.

The District is wrong on both points and its motion for judgment on the pleadings/

summary judgment should be denied because, at a minimum, there are serious issues of material fact as to whether the MPD officers were on an emergency run and, assuming they were, whether their behavior rises to a level of gross negligence.

## **STATEMENT OF FACTS**

MPD General Order 301.03 provides that:

> An operator of a Department vehicle <u>shall not</u> participate in a vehicular pursuit initiated by other law enforcement agencies operating within the District of Columbia or a vehicular pursuit initiated by officers of outside jurisdictions, which enter or terminate in the District.

Ex. 8 (United States' MSJ, at 11) (emphasis added). Despite this clear prohibition against participating, in any way, in vehicular pursuits initiated by officers outside of the District of Columbia which enter into the District, and despite the instruction from their supervisor that they not participate in the pursuit, Ex. B, at 44, 48, on December 8, 2004, MPD Officers Marvin Watkins and Gary Gulich found themselves participating in a pursuit initiated by the United States Park Police that had entered the District of Columbia.[1]

At some point during their pursuit, MPD Officers Gulich and Watkins were driving in the area of 61st Street, when they heard the "shots fired" announcement. Ex. C, at 79.[2] Upon

---

[1] The manner by which Officers Watkins and Gulich were informed about the Park Police's pursuit is unclear. Officer Watkins testified that he and Officer Gulich actually saw the Park Police pursuing the black jeep and called into the dispatcher to see if the dispatcher was aware of the pursuit. Ex. C, at 29-30. Officer Gulich testified that it was in fact the dispatcher who first made an announcement regarding the Park Police pursuit. Ex. A, at 29-30.

[2] As with many of the facts surrounding this incident, Officer Gulich's memory regarding what he and Officer Watkins were doing at the time the "shots fired" announcement was made differs from Officer Watkins. According to Officer Gulich, he and Officer Watkins had come to a complete stop at 62nd Street, had turned off their lights and siren, and were waiting for further information to determine if the suspects were going to "bail out" of the vehicle, when they heard the shots fired announcement. Ex. A, at 44-45.

hearing the "shots fired" call, however, the Officers did not change their driving speed or direction. Rather, Officer Watkins continued to drive within the speed limit. See Ex. C, 52-53; see also Ex. A, at 53. According to Officer Watkins, he had previously activated his lights and sirens when he and Officer Gulich first began participating in the Park Police's pursuit, so those remained on. Ex. C, at 80. Thus, the "shots fired" announcement in no way altered the MPD officers' behavior.

Officer Watkins testified that the officers were not "participating" in the Park Police pursuit, for which they would have needed clear authorization from their superiors. Ex. C, at 76. According to Officer Watkins, he and Officer Gulich were merely "assisting" the Park Police in the event one of the suspects "bailed out" of the vehicle. Id. However, Sergeant Wade, Officer Watkins' supervisor, testified that officers cannot assist in a pursuit by actively pursuing the suspect or activating their lights and sirens. Ex. B, at 48. Despite this fact, Officer Watkins testified that he and Officer Gulich were merely trying to get into the area where the suspect was so they could perform a "canvas" of the area. Ex. C, at 76. Significantly, at the time the "shots fired" announcement was made, the officers were already en route to the area of 61st & Clay Street. Id. at 79. According to the Park Police Report, the "shots fired" call was made at approximately 1520 hours. See United States' MSJ, Ex. 2, at 0007. This was less than a minute prior to when the collision occurred between Officer Houghton and the MPD Officers. Id. at 00001, 00009. In fact, Officer Houghton testified that the collision with MPD occurred "10 to 30 seconds, within a minute" after the "shots fired" announcement was made. See United States' MSJ, Ex. 1, at 60.

Each MPD unit has a "patrol service area" that it is responsible for monitoring. Ex. C, at

18. In "assisting" the Park Police, Officers Gulich and Watkins traveled outside of their patrol service area to the intersection of Clay and 61st Street. Id. at 48. When they approached the stop sign at 61st & Clay Street, the officers were traveling at a high rate of speed and did not stop. United States' MSJ, Ex. 1, at 25; 34-35. Rather, they disregarded the stop sign and, without regard to any civilians or other law enforcement vehicles in the area, they barreled into the Park Police vehicle. Id. at 21. In doing so, they violated a separate MPD General Order that requires that officers engaged in a vehicular pursuit stop when approaching an intersection controlled by a stop sign. United States' MSJ, Ex. 8, MPD General Order Series No. GO-OPS-301.03, " at 4, § V. D. 2.

## ARGUMENT

The facts in this case demonstrate that the MPD Officers were not engaged in an emergency run and thus the gross negligence standard should not apply. However, even if the Court were to conclude that the MPD officers were on an emergency run at the time of the incident, there are sufficient material facts in dispute as to whether the officers acted with the requisite gross negligence necessary for a finding of liability.

**I.   THE DISTRICT OF COLUMBIA IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT.**

The District has sought judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). However, because the District has submitted matters outside of the pleadings in support of its motion, its motion is more appropriately viewed as one seeking summary judgment. See Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

Summary judgment pursuant to Fed. R. Civ. P. 56(c) is only appropriate when the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, the trier of fact must view all the facts, and the reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. In light of this standard, it is evident that the District's motion must be denied.

## II.   THE MPD OFFICERS WERE NOT ON AN "EMERGENCY RUN" AND THUS THE GROSS NEGLIGENCE STANDARD DOES NOT APPLY IN THIS CASE.

The District of Columbia Employee Non-Liability Act, D.C. Code section 2-412, provides that as it relates to claims for damages for injury or loss of property by an employee of the District, if such employee is operating an "emergency vehicle on an emergency run" within the scope of his employment, "the District shall be liable only for gross negligence." D.C. Code § 2-412. The Act defines an "emergency run" as:

> the movement of a District-owned vehicle, by direction of the operator . . . under circumstances which lead the operator or such persons . . . to believe that such vehicle should proceed expeditiously upon a particular mission or to a designated location for the purpose of dealing with a supposed fire or other emergency, an alleged violation of a statute or regulation, or other incident requiring emergency action . . . .

D.C. Code § 2-411.

The District would have this Court believe that Officer Watkins' and Gulich's unauthorized participation in the Park Police pursuit was transformed into an "emergency run" once the "shots fired" announcement was made. While this argument might appear appealing, it

is not supported by the facts in this case.

First, because the accident occurred seconds after the "shots fired" announcement was made, it is clear that the MPD officers were already en route to the area. Indeed, this is consistent with Officer Watkins' testimony. Ex. C, at 79. And, according to Officer Watkins, he and Officer Gulich were not "participating in the pursuit." Id. at 76. The "shots fired" announcement was made "10 to 30 seconds" prior to the officers' collision with the Park Police vehicle. United States' MSJ, Ex. 1, at 60. It is therefore apparent that, due to the short time lapse prior to the accident, the officers were already en route to the location where the suspects had fled; the fact that the "shots fired" call was made while they were in transit does not render their pursuit an "emergency run." Because the officers were not on an "emergency run the entire time they were "assisting" the Park Police, they cannot transform the nature of their conduct into an emergency run "10 to 30 seconds" prior to the time they collided with the Park Police vehicle. See, e.g., District of Columbia v. Walker, 689 A.2d 40, 46 n.9 (D.C. 1997) (noting that the fact that officers were told to cease pursuit of suspect could not "support a finding of liability, given the evidence that the collision occurred within one minute or less . . ." after they were told to cease the pursuit).

A second factor that warrants a finding that the officers were not on an emergency run at the time of the accident is that the officers in no way altered their behavior upon hearing the "shots fired" announcement. See D.C. Code § 2-411 ("Emergency run" requires that operator of vehicle believe that he "should proceed expeditiously . . . to a designated location . . . .") (emphasis added). According to both Officer Watkins and Officer Gulich, Officer Watkins continued to obey the speed limit and kept his lights and sirens activated. See Ex. C, 52-53; 80;

see also Ex. A, at 53. Thus, despite the District's contention that, at hearing the "shots fired" announcement, the officers "instantly determined that this call constituted an emergency situation and immediately began to respond to the area . . . ," District of Columbia's Statement of Undisputed Material Facts, ¶ 7 (emphasis added), the evidence shows that the officers continued upon their predetermined course of conduct. And it is the officers' actions that are dispositive. See, e.g., Duggan v. District of Columbia, 884 A.2d 661, 664 (D.C. 2005) (noting that significant factor in determining whether officer was on emergency run was that the officer's actions demonstrated that "he believed it necessary to proceed expeditiously in pursuit of [the suspect] . . . ."). In light of the officers' behavior in this case, it is simply not the case that the officers were responding to an emergency situation at the time of the accident. Rather, the officers were already participating in a Park Police pursuit, contrary to the MPD's General Order and the orders of their supervisor on duty, and there happened to be a "shots fired" announcement seconds prior to their collision with the Park Police vehicle. The officers did not increase their speed to take any other action that would support a finding that they believed they were on an emergency run. This is not a situation in which the emergency run statute should be held to apply.

 It is noteworthy in this case that, unlike the cases cited by the District, Officers Gulich and Watkins were not directly pursuing a fleeing suspect; rather, they were attempting to get into the area where the suspect was in the event he decided to "bail out" of the car. Ex. C, at 76. Thus, this situation is distinguishable from Abney v. District of Columbia, 580 A.2d 1036, 1037-38 (D.C. 1990), where the police officer witnessed a suspect in a car sideswipe another vehicle and accelerate away from the scene. Nor is this case like Duggan, 884 A.2d at 664, to the extent

that the officer directly witnessed a vehicle "driving erratically" and, when he attempted to stop the vehicle, the vehicle took off at a high rate of speed. Id.[3] See also Walker, 689 A.2d at 44 (officer viewed driver who looked young, determined that car was stolen, and engaged in chase of vehicle after suspect refused to stop); District of Columbia v. Henderson, 710 A.2d 874, 876 (D.C. 1998) (officers were responding to "a legitimate Code One emergency . . . ."). None of the cases cited by the District address the precise facts presented in this case.

For these reasons, the District is not entitled to the benefit of the District of Columbia Employee Non-Liability Act. At the very least, there is a material issue of fact as to whether the statute applies to a situation where MPD officers are participating, contrary to MPD General Orders and the orders of their supervising officer, in a pursuit initiated by another law enforcement agency, and are attempting to "get in the area for a canvas, or in this case, of a bail out . . . ." immediately prior to a "shots fired" announcement. Ex. C, at 76. Thus, the District's motion for summary judgment should be denied. See Duggan, 884 A.2d at 664 n.1 (noting that there may "be circumstances where the issue of whether a vehicle operator was on an emergency run presents a jury issue . . ." which can occur "when evidence supports a claim that the operator did not in fact-or did not honestly-believe that he should proceed or was proceeding, on a mission as defined by the statute.").[4]

### III. THE MPD OFFICERS WERE GROSSLY NEGLIGENT.

A showing of gross negligence can be made where there is "an extreme deviation from

---

[3] Notably, in Duggan, while the court determined that the officer was on an emergency run, it remanded the case to the trial court on the issue of whether the officer "was grossly negligent in the manner by which he conducted the emergency run." 884 A.2d at 664.

[4] Notably, the District does not provide any argument that the Officers were not negligent in the operation of their vehicle.

the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." Walker, 689 A.2d at 44. While gross negligence can include conduct "so extreme as to connote some sort of bad faith[,]" District of Columbia v. Hawkins, 782 A.2d 293, 300 (D.C. 2001), where there is no evidence of the actor's subjective bad faith, "the extreme nature of the conduct may be shown by demonstrating that the actor acted in disregard of a risk 'so obvious that [the actor] must be taken to be aware of it and so great as to make it highly probable that harm would follow." Id. (quoting Walker, 689 A.2d at 44-45). In determining whether the officers were grossly negligent, "the primary focus must be . . . upon that particular conduct that might be said temporally and spatially to have proximately caused the collision." Hawkins, 782 A.2d at 300 (citation omitted). In this case, the evidence supports a finding that the actions of Officers Watkins and Hawkins, which proximately caused the collision at issue, were grossly negligent.

     First, there is evidence that the MPD Officers violated at least two, if not more, of the MPD's general orders in responding to the Park Police's pursuit. This evidence can support a finding that the officers were grossly negligent in their actions. See Walker, 689 A.2d at 47 n.13 (noting that violation of MPD General Order "was one factor that the jury could consider . . ." in determining whether the officers were grossly negligent); Duggan, 884 A.2d at 664 (same). Here, the officers were in direct violation of MPD General Order 301.03, which specifically provides that "[a]n operator of a Department vehicle shall not participate in a . . . vehicular pursuit initiated by officers of outside jurisdictions, which enter or terminate in the District." United States' MSJ, Ex. 8, at 11, § VI, C. 2. Despite this clear prohibition from participating in the Park Police pursuit, and the order given by their supervising officer that MPD units were not

9

to "get involved" in the Park Police pursuit, Ex. B, at 44, Officers Watkins and Gulich traveled outside of their patrol service area, lights and sirens flashing, and at an excessive rate of speed, to attempt to get in the area where the suspect was, so they could "canvas" the area, in the case of a "bail out." Ex. C, at 76. They thus violated MPD's practices, as testified to by their supervisor, by activating their lights and sirens when they were merely supposed to "assist" in the pursuit. Id. at 48. And, when they approached a four-way stop sign, the officers violated another provision of the MPD's General Order that required them to stop. United States MSJ, Ex. 8, at 4, § V. D. 2. These aggravating factors can support a finding of gross negligence in this case because they were a proximate cause that led to the collision; had it not been for the officers' decision to violate the MPD General Orders and the instructions of their supervisor, they would not have been in a location close to the "shots fired" call, as it was outside of their patrol service area. See Walker, 689 A.2d at 46 (in making gross negligence determination, court must focus "upon that particular conduct that might be said to have proximately caused the collision.").

      Second, aside from their violation of the MPD's General Orders and their supervisor's instructions, the evidence supports a finding that the MPD officers' decision to participate in the pursuit and the manner in which they did so was grossly negligent. The evidence shows that the officers were fully aware that Park Police were handling the pursuit of the suspect and there were many police vehicles participating in the pursuit. Officer Gulich specifically testified that they knew that "there were units all in [the] general area . . . ." Ex. A, at 55. Nonetheless, Officers Watkins and Gulich determined that they would travel with their lights and sirens on at a high rate of speed and also participate in the chase. In doing so, they barreled past a stop sign and hit

the Park Police vehicle, with reckless disregard for the safety of others.[5] These factors support a finding of gross negligence. See Duggan, 884 A.2d at 665 (holding that in determining whether officer was grossly negligent, "the jury may consider the reasonableness both of [the officer's] decision to pursue and the manner in which he did so.").[6]

## CONCLUSION

For the reasons set forth above, the District of Columbia's motion for judgment on the pleadings or, in the alternative, for summary judgment, should be denied.[7]

                              Respectfully submitted,

                              /s/ Jeffrey A. Taylor
                            JEFFREY A. TAYLOR, D.C. BAR # 498610
                            United States Attorney

                              /s/ Rudolph Contreras
                            RUDOLPH CONTRERAS, D.C. BAR #  434122
                            Assistant United States Attorney

                              /s/ Michelle N. Johnson
                            MICHELLE N. JOHNSON, D.C. BAR # 491910
                            Assistant United States Attorney
                            United States Attorney's Office
                            Civil Division
                            555 4th Street, N.W. – Room E4212
                            Washington, D.C. 20530

---

[5] While Officer Gulich testified that the Park Police vehicle hit the MPD vehicle on the passenger side of the door, Ex. A, at 47, he also testified that there was no damage to his door. Id. at 52.

[6] As noted supra, at 7, none of the cases cited by the District in its discussion of gross negligence address a situation where the officers are not directly pursuing a fleeing suspect.

[7] In light of the Court's grant of the Plaintiffs' motion to amend their complaint to allege gross negligence, Defendant need not address the District's argument that Plaintiffs' failed to allege gross negligence in their complaint.

(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Perri Rothemich
United States Department of the Interior
Office of the Solicitor
1849 C Street, N.W.
MS 7308
Washington, DC 20240