IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROLAN GIBSON,** *et al.*,  )<br>)<br>    **Plaintiffs,**   )<br>      )    Civil No.  06-0551 (JMF)<br>    **v.**    )<br>      )<br>**DISTRICT OF COLUMBIA,** *et al.*,  )<br>      )<br>    **Defendants.**    )<br>_____) | |

**DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO THE UNITED STATES'
OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S
MOTION FOR JUDGMENT ON THE PLEADINGS
OR FOR SUMMARY JUDGMENT**

Defendant District of Columbia ("the District"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. Rules 12(c), 56(b) and (c), respectfully responds to the United States' Opposition to Defendant District of Columbia's Motion for Judgment on the Pleadings or for Summary Judgment as follows:

*Background of Legal Arguments*

This case arises out of a three-way automobile accident involving a Metropolitan Police Department ("MPD") vehicle occupied by driver Officer Marvin Watkins and passenger Officer Gary Gulich, a United States Park Police ("Park Police") vehicle occupied by Officer Donald Houghton, and plaintiff Rolan Gibson's vehicle.  The legally relevant facts in this matter are as follows:

In the minutes leading up to the accident, Officers of the MPD were assisting the Park Police with their vehicular pursuit of a suspect who was believed to have committed an assault on a police officer.  (District of Columbia's Motion for Judgment on the Pleadings or for

Summary Judgment - hereinafter "Docket No. 35" - Exhibit A, Page 100). This pursuit culminated in the area of 60th and Clay Street. (Docket No.35, Exhibit C, Page 20).

After the fleeing suspect's vehicle came to a stop in this area, and moments prior the accident, a call for "shots fired" went out over both the MPD radio channel and the Park Police radio channel.[1] Both MPD officers instantly determined that this call constituted an emergency situation and immediately began to respond to the area where this emergency had occurred. (Docket No. 35, Exhibit A, Pages 51 - 52, Exhibit D, Pages 44 and 51).

At the time of the accident, the automobile driven by Park Police officer Donald Houghton was traveling west towards the four-way stop sign intersection of 61st Street and Clay in the Direction of where the pursuit had culminated. (Docket No. 35, Exhibit B, MPD Police Report). As Officer Houghton entered the intersection he was traveling between 30 and 50 miles per hour. (Docket No.35, Exhibit C, Page 29). The MPD vehicle was traveling north on 61st Street toward the intersection with Clay Street. The MPD vehicles' rate of speed at the time it entered the intersection is disputed. MPD officers estimate that they were traveling no faster than ten miles per hour. (Docket No., Exhibit D, Page 47 - 48). Park Police Officer Houghton estimated that the MPD vehicle was traveling approximately forty-five miles per hour. (Docket No. 35, Exhibit C, Page 35). The vehicle occupied by the Plaintiffs was stopped in the area at or near the stop sign pointing south on 61st Street. (Docket No. 35, Exhibit B,). Both MPD officers and Park Police Officers Houghton have testified that they had activated the lights and sirens for their vehicles at the time they entered the intersection. (Docket No. 35, Exhibit A, Page

---

[1] It is undisputed that the call for "shots fired" occurred prior to the accident. MPD Officers Watkins and Gulich and Park Police Officer Houghton all testified that they were alerted to this emergency prior to the accident. (Docket No. 35, Exhibit A, Page 51; Exhibit D, Pages 44 and 51; and Exhibit C, Pages 19 and 60). Both Plaintiffs also testified that they heard the sound of gun shots, prior to the accident, coming from the direction where the pursuit had culminated. (Docket No. 35, Exhibit E, Pages 11-12, and Exhibit F, Pages 26 – 27).

80; Exhibit D, Pages 44; and Exhibit C, Page 30). After both police vehicles had entered the intersection, they collided. The impact of the collision caused both vehicles to strike the plaintiffs' car. (Docket No. 35, Exhibit B and Exhibit C, Page 31).

On June 28, 2007, the United States filed its opposition to the District of Columbia's Motion for Judgment on the Pleadings, or for Summary Judgment, in which it attempted to counter the District's arguments that the MPD officers involved in this case were on an "emergency run," and therefore, a *gross* negligence standard should be applied to the District's actions in this matter and that no reasonable jury could conclude that the District acted with gross negligence in this matter.

*Argument*

I.     **Metropolitan Police Department Officers Watkins and Gulich Were In an Emergency Vehicle On an Emergency Run at the Time of the Accident**

In its opposition, the United States first argues that the MPD officers were not on an "emergency run," and thus, the gross negligence standard does not apply in this case. (Docket No. 44, Page 5.). In support to this argument, the United States put forth three main assertions.

The United States first asserts that "[b]ecause the [MPD] officers were not on an 'emergency run' the entire time they were 'assisting' the Park Police, they cannot transform the nature of their conduct into an emergency run '10 to 30 seconds' prior to the time they collided with the Park Police vehicle." (Docket No. 44, Page 6.)

Here, the United States seems to argue that an emergency cannot occur, be perceived of, and responded to by police officers, in "10 to 30 seconds." This assertion is without merit. The record is clear that all officers were aware that a fleeing suspect had led police officers on a high speed chase. The contention that the MPD officers were somehow not able to perceive and respond to an emergency call of "shots fired" when they were, at the very least, already

3

cognizant of a situation which constituted a threat to the public and their fellow officers (including their fellow officers in the United States Park Police) is simply not credible.

The United States next argues that the fact that the Officer Watkins "continued to obey the speed limit and kept his lights and sirens activated" was evidence that the MPD officers did not perceive an emergency when they received the call of "shots fired" and therefore, they were not on an "emergency run". (Docket No. 44, Pages 6 and 7.) In other words, the United States seems to argue that in order to be on an emergency run, police officers must drive their vehicles at a dangerous and excessive speed. This argument is undermined by the United States' own arguments.

The record is clear that both MPD officers heard the call for shots fired and were responding with haste to lend assistance when this accident occurred. (Docket No. 35, Exhibit A, Pages 51 - 52, Exhibit D, Pages 44 and 51). Indeed, this fact is supported by the United States' own arguments in its Opposition to the District Motion for Judgment on the Pleading or Summary Judgment.

As noted above, the United States has argued that only a short amount of time elapsed - "10 to 30 seconds" – between the time a call for shots fire went out and the collision between the Park Police and the MPD. Also in its Opposition, the United States claims that the MPD "determined that they would travel with their lights and sirens on *at a high rate of speed* and also participate in the chase. In doing so, they barreled past a stop sign and hit the Park Police vehicle." (Docket No. 44, Pages 10 and 11.) (emphasis added.) While the District of Columbia does concede that it was the MPD vehicle that struck the Park Police vehicle, the United States' assertions regarding MPD's rate of speed immediately prior to the collision vitiate any argument

that the MPD officers were not responding to what they perceived to be an emergency. (Docket No. 35, Exhibit B, MPD Police Report).

Finally, the Untied States attempts to distinguish the cases cited by the District of Columbia in its Motion for Summary Judgment by arguing that "unlike the cases cited by the District of Columbia, [MPD was] not directly pursuing a fleeing suspect; rather, they were attempting to get in the area where the suspect was in the event he decided to 'bail out' of the car." (Docket No. 44, Page 6.)

This attempt to distinguish fails. Simply stated, in order for this Court to agree with the above-described representation, the Court would have to conclude that a call of "shots fired" following a high speed chase does not reasonably justify the police to "proceed expeditiously" within the contemplation of D.C. Code § 2-411(4). Such an emergency clearly justifies expeditious action, and therefore the United States' legal distinction is of little or no import.

The facts in the record clearly demonstrate that the MPD officers were on an emergency run as defined by D.C. Code § 2-411(4), and therefore, the Court should reject the United States' argument that they were not.


**II. The MPD Officers Were Not Grossly Negligent.**

The United States next argues that the MPD officers acted with gross negligence prior to the accident which gave rise to this cause of action. The facts and case law indicate otherwise. The Unites States focuses on the alleged violation of Metropolitan Police Department General Orders during the events which led up the accident by the MPD officers. However, any such violations, even if proved, are of deminimus legal importance. In *Abney v. District of Columbia*, 580 A.2d 1036, 1041 (D.C. 1990), the District of Columbia Court of Appeals specifically

5

addressed the amount of weight that should be attributed to an MPD General Order in an "emergency run" case.  *Id*. at 1041, citing *Wanzer v. District of Columbia,* 580 A.2d 127 (D.C.1990) ("Agency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation. Rather, they provide officials with guidance on how they should perform those duties which are mandated by statute or regulation.").

The court has defined "gross negligence" to require "such an extreme deviation from the ordinary standard of care as to support a finding of *wanton, willful and reckless disregard* or *conscious indifference* for the rights and safety of others."  *Hawkins*, 782 A.2d at 300 (*quoting Walker*, 689 A.2d at 44) (emphasis added); *Henderson*, 710 A.2d at 876.  Furthermore, "[t]his standard has been held to connote that the actor has engaged in conduct so extreme as to imply some sort of bad faith."  *Henderson*, 710 A.2d at 876.

Here, the United States has clearly failed to provide sufficient facts for this Court to conclude that the MPD officers acted with gross negligence. The United States has likewise failed to provide any binding legal authority which demonstrates that a finding of gross negligence could be appropriate on these facts.  Therefore, The Court should reject the United States' argument that the MPD officers were grossly negligent.

<u>**Conclusion**</u>

For the reasons set forth above, the District of Columbia's motion for Judgment on the Pleadings or for Summary Judgment, should granted.

        Respectfully submitted,

        LINDA SINGER
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE

Deputy Attorney General,
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Sec. III

_____/s/_____
JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov

Case 1:06-cv-00551-JMF   Document 47   Filed 07/12/2007   Page 8 of 8