IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROLAN GIBSON,** *et al.,* | ) |
| | ) |
|       **Plaintiffs,** | ) |
| | )    **Civil No. 06-0551 (JMF)** |
|       v. | ) |
| | ) |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) |
| | ) |
|       **Defendants.** | ) |
| _____ | ) |

**DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO THE PLAINTIFFS'
OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S
MOTION FOR JUDGMENT ON THE PLEADINGS
OR FOR SUMMARY JUDGMENT**

Defendant District of Columbia ("the District"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. Rules 12(c), 56(b) and (c), respectfully responds to the Plaintiffs' Opposition to Defendant District of Columbia's Motion for Judgment on the Pleadings or for Summary Judgment as follows:

*Background of Legal Arguments*

This case arises out of a three-way automobile accident involving a Metropolitan Police Department ("MPD") vehicle occupied by driver Officer Marvin Watkins and passenger Officer Gary Gulich, a United States Park Police ("Park Police") vehicle occupied by Officer Donald Houghton, and plaintiff Rolan Gibson's vehicle. The legally relevant facts in this matter are as follows:

In the minutes leading up to the accident, Officers of the MPD were assisting the Park Police with their vehicular pursuit of a suspect who was believed to have committed an assault on a police officer. (District of Columbia's Motion for Judgment on the Pleadings or for

Summary Judgment - hereinafter "Docket No. 35" - Exhibit A, Page 100).  This pursuit culminated in the area of 60th and Clay Street.  (Docket No.35, Exhibit C, Page 20).

After the fleeing suspect's vehicle came to a stop in this area, and moments prior the accident, a call for "shots fired" went out over both the MPD radio channel and the Park Police radio channel.[1]  Both MPD officers instantly determined that this call constituted an emergency situation and immediately began to respond to the area where this emergency had occurred. (Docket No. 35, Exhibit A, Pages 51 - 52, Exhibit D, Pages 44 and 51).

At the time of the accident, the automobile driven by Park Police officer Donald Houghton was traveling west towards the four-way stop sign intersection of 61st Street and Clay in the Direction of where the pursuit had culminated.  (Docket No. 35, Exhibit B, MPD Police Report).  As Officer Houghton entered the intersection he was traveling between 30 and 50 miles per hour. (Docket No.35, Exhibit C, Page 29).  The MPD vehicle was traveling north on 61st Street toward the intersection with Clay Street.  The MPD vehicles' rate of speed at the time it entered the intersection is disputed.  MPD officers estimate that they were traveling no faster than ten miles per hour. (Docket No., Exhibit D, Page 47 - 48).  Park Police Officer Houghton estimated that the MPD vehicle was traveling approximately forty-five miles per hour. (Docket No. 35, Exhibit C, Page 35).   The vehicle occupied by the Plaintiffs was stopped in the area at or near the stop sign pointing south on 61st Street.  (Docket No. 35, Exhibit B,).   Both MPD officers and Park Police Officers Houghton have testified that they had activated the lights and sirens for their vehicles at the time they entered the intersection. (Docket No. 35, Exhibit A, Page

---

[1] It is undisputed that the call for "shots fired" occurred prior to the accident.  MPD Officers Watkins and Gulich and Park Police Officer Houghton all testified that they were alerted to this emergency prior to the accident. (Docket No. 35, Exhibit A, Page 51; Exhibit D, Pages 44 and 51; and Exhibit C, Pages 19 and 60).  Both Plaintiffs also testified that they heard the sound of gun shots, prior to the accident, coming from the direction where the pursuit had culminated. (Docket No. 35, Exhibit E, Pages 11-12, and Exhibit F, Pages 26 – 27).

80; Exhibit D, Pages 44; and Exhibit C, Page 30). After both police vehicles had entered the intersection, they collided. The impact of the collision caused both vehicles to strike the plaintiffs' car. (Docket No. 35, Exhibit B and Exhibit C, Page 31).

On June 28, 2007, the Plaintiffs filed their opposition to the District of Columbia's Motion for Judgment on the Pleadings, or for Summary Judgment, in which they attempted to counter the District's arguments that the MPD officers involved in this case were on an "emergency run," and therefore, a gross negligence standard should be applied to the District's actions in this matter and that no reasonable jury could conclude that the District acted with gross negligence in this matter.

*Argument*

I.  **Metropolitan Police Department Officers Watkins and Gulich Were In an Emergency Vehicle On an Emergency Run at the Time of the Accident**

In its opposition, the Plaintiffs' first argues that the MPD officers were not on an "emergency run," and thus, the gross negligence standard does not apply in this case. (Docket No. 42, Page 12.). In support to this assertion, the Plaintiffs argue "it is clear that this Defendant's cruiser was not operating the emergency lights atop the vehicle or its sirens or and other audible device." Accordingly, the Plaintiffs reason that MPD could not, therefore, have been on an emergency run. However, this argument is conclusory in nature, not supported by the evidence, and flawed for two reasons. First, both MPD officers have testified that both their lights and sirens were activated when the accident occurred. (Docket No. 35, Exhibit A, Page 80; Exhibit D, Pages 44). Second, the Plaintiffs' choose to ignore the case law cited in the District's Motion for Judgment on the Pleadings or Summary Judgment, which cited to *Abney v. District of Columbia*, 580 A.2d 1036, 1041 (D.C. 1990), in which the D.C. Court of Appeals held that the emergency run statute does not require that the vehicle's emergency lights and siren be activated

to qualify as an emergency run.   In that case, the trial court had instructed the jury that a Metropolitan Police officer could be considered to be on an emergency run only where "the officer is driving in an emergency vehicle with both the over head lights and siren activated." *Id.* at 1040.  The D.C. Court of Appeals reversed the trial court's decision, holding that "the trial court erred in limiting the definition of 'an emergency vehicle' to a police car 'with both the over head lights and siren activated.'" *Id.* at 1041.

The Plaintiffs next claim that the MPD officers were not on an emergency run because their action did not fall within the statutory requirement that the driver of the District's emergency vehicle must be proceeding under "…circumstances which lead the operator …to believe that such vehicle should proceed expeditiously upon a particular mission *or* to a designated location for the purpose of dealing with a supposed fire or other emergency…" D.C. Code § 2-411(4) (emphasis added).

The record in this case is undisputed as to the fact that a call for "shots fired" went out prior to the accident.  Both MPD officers have testified that after hearing this emergency alert, they proceeded toward the intersection where the accident occurred. (Docket No. 35, Exhibit A, Pages 51 - 52, Exhibit D, Pages 44 and 51).   Further, Officer Gulich has testified that the MPD vehicle was proceeding north on 61st Street and beginning a left turn onto Clay Street "to assist the officer who had just discharged his weapon on 60th Street." (Docket 35 No. 35, Exhibit D, Page 51).  Therefore, Plaintiffs' assertions that the MPD officers were somehow not on "a particular mission," or that they were not proceeding to a "designated location," are without merit. Further, Plaintiffs' argument that the MPD officers cannot claim that they were "proceeding expeditiously to assist with a call of 'shots fired'" is contradicted by the Plaintiffs' own pleading: "Gulich has testified that 'we accelerated to get up to the intersection, slowed

4

down for the intersection, and entered the intersection.'" (Plaintiffs' Opposition to the Districts Motion for Judgment on the Pleadings or Summary Judgment, Docket No. 42, Page 10.)

The undisputed facts in the record clearly demonstrate that the MPD officers were on an emergency run as defined by D.C. Code § 2-411(4), and therefore the Court should reject the Plaintiffs' argument that they were not and enter judgment for the District of Columbia.

**II.        The MPD Officers Were Not Grossly Negligent.**

The Plaintiffs next argue that the MPD officers acted with gross negligence prior to the accident, which gave rise to this cause of action. The facts and case law indicate otherwise.

The Plaintiffs' argue that the alleged "fact that the Defendant DC's employees were operating the MPD cruiser in direct contravention of existing Departmental Standing Orders and in violation of the District of Columbia's Municipal Regulations is a clear demonstration of the 'wanton, willful and reckless disregard' standard…" (Opposition, Docket No. 42, Page 18.). Plaintiffs' reliance on MPD General Orders is misplaced because MPD General Orders cannot set a national standard of care in cases such as the one now before the Court. *District of Columbia v. Walker*, 689 A.2d 40, 47 (D.C.,1997). *See also District of Columbia v. Banks,* 646 A.2d 972, 983 (D.C.1994) (Farrell, J., concurring) (arguing that violation of General Order 301.3 in police pursuit could be considered by jury as one factor in deciding gross negligence issue, but could not in itself "support a finding of negligence, *let alone gross negligence*") (emphasis added.).

The District of Columbia Court of Appeals has defined "gross negligence" to require "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *Hawkins*, 782 A.2d at 300 (*quoting Walker*, 689 A.2d at 44) (emphasis added); *Henderson*, 710

A.2d at 876.  Furthermore, "[t]his standard has been held to connote that the actor has engaged in conduct so extreme as to imply some sort of *bad faith*." *Henderson*, 710 A.2d at 876.  Even if the Court were to consider Plaintiffs' argument that the MPD Officers entered the intersection in which the accident occurred traveling no faster than 45 miles per hour and that they failed to completely look both ways before entering, these assertions reflect a mere fraction of the dangerousness described in the cases cited in the District's Motion for Summary Judgment, in which the Court almost routinely held that MPD Officers were not grossly negligent.  It is clear that Plaintiffs have not and cannot identify any facts in the record that show that the MPD officers in this matter acted in *bad faith.*

## Conclusion

For the reasons set forth above, the District of Columbia's motion for Judgment on the Pleadings or for Summary Judgment, should granted.

<div style="margin-left: 3em;">

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General,
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Sec. III

_____/s/_____
JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001

</div>

202) 724-6600  
(202) 727-3625 (fax)  
E-mail: James.Vricos@dc.gov

Case 1:06-cv-00551-JMF   Document 48   Filed 07/12/2007   Page 8 of 8